# Bernard Woodmansee v. R. Kent Stoneman, State of Vermont v. Bernard J. Woodmansee

[344 A.2d 26]

Nos. 182-72, 173-72, 74-73

Present: Barney, C.J., Smith, Daley and Larrow, JJ., and Keyser, J. (Ret.), Assigned

Opinion Filed August 21, 1975

450

Francis X. Murray, Esq., Chittenden County State's Attorney, Burlington, for the State.

Robert Edward West, Esq., Defender General, Gregory A. McKenzie, Esq., Deputy Defender General and Charles S.

452

*Martin, Esq.,* Appellate Defender, Montpelier, for Woodmansee.

**Larrow, J.** Three appeals, all arising from the same criminal charge and conviction, were argued together in this Court. Appellant Woodmansee was charged below with violation of 13 V.S.A. § 5, by assisting one Frank Berard to avoid arrest and punishment for the crime of murder. See *State* v. *Berard,* 132 Vt. 138, 315 A.2d 501 (1974).

In No. 182-72, an appeal was taken from the order of the Windsor County (now Superior) Court denying appellant's habeas corpus petition. No. 173-72 was an attempt to invoke the original jurisdiction of this Court to compel action by the District Court as to motions and related matters then pending before it. No. 74-73 is a direct appeal from the conviction and sentence on the principal charge. Nos. 173-72 and 74-73 have been briefed together, with the understanding that matters raised in No. 173-72 and not briefed are to be treated as waived. However, we have considered all matters raised and not rendered moot by the eventual conviction and sentence.

The habeas corpus petition (No. 182-72) was addressed to the Windsor County Court because the petitioner was then confined, awaiting trial, at the State Prison in Windsor. He claimed that his bail was constitutionally excessive, a matter later ruled upon by this Court in *State* v. *Woodmansee,* 131 Vt. 22, 298 A.2d 814 (1972). He also claimed illegal imprisonment because of the lack of a probable cause hearing, citing 13 V.S.A. §§ 5551–5553, and various federal decisions. The trial court dismissed his petition, correctly pointing out that the cited statute had been repealed, holding the bail not excessive, and not ruling on the Fourth Amendment question raised by petitioner and subsequently decided in *Gerstein* v. *Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). Petitioner had, with foresight, cited the trial court decision in *Gerstein.* The County Court also ruled against petitioner on a collateral claim that the complaint lacked legal specificity.

The trial court ruling with respect to repeal of the statute relied upon was correct. The repeal was effective July 1, 1972. 1971, No. 258 (Adj. Sess.), § 19. Its ruling with

respect to the specificity of the complaint has been rendered moot, since the complaint was subsequently amended.

██  In the then status of the case, the failure of the trial court to consider the Fourth Amendment claim raised by petitioner, that he had been detained without a probable cause hearing or finding, was error. *Gerstein, supra.* The issue is now, however, moot. Subsequent to the proceedings in Windsor County Court, a probable cause hearing was held, and findings made, on the basis of the amended complaint. Moreover, even if this procedure had not been followed, subsequent to conviction reversal is not required for failure to hold a probable cause hearing. *Gerstein, supra,* 95 S.Ct. at 865–66:

> In holding that the prosecutor's assessment of probable cause is not sufficient alone to justify restraint on liberty pending trial, we do not imply that the accused is entitled to judicial oversight or review of the decision to prosecute. Instead, we adhere to the Court's prior holding that a judicial hearing is not prerequisite to prosecution by information. Nor do we retreat from the established rule that illegal arrest or detention does not void a subsequent conviction. Thus, as the Court of Appeals noted below, although a suspect who is presently detained may challenge the probable cause for that confinement, a conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause. (Citations omitted.)

For the foregoing reasons, the appeal in No. 182-72 must be dismissed.

With respect to the District Court trial on the merits, the respondent has assigned and briefed at length numerous claims of error, ranging from claimed abuses of the statutory inquest procedure to obtain evidence, through failure to exclude hearsay evidence, improper limitation of cross-examination, improper argument, insufficiency of proof of guilt, and improper jury instruction, to imposition of an illegal sentence. We regard his claim of insufficiency of the evidence to justify conviction, upon the information as here framed, to be dispositive of the present appeal and to require reversal and re-

mand. We will therefore, under our usual practice, treat at length only that assignment of error, with comment upon such of the other claims as may become pertinent upon retrial.

■ The information upon which the respondent was tried was amended upon the State's motion before trial. It charged violation of 13 V.S.A. § 5 in that respondent, not being within the degrees of relationship excluded by the statute, assisted Frank Berard in avoiding arrest and imprisonment for the crime of murdering one Raymond Lestage. Recital at length of the gory details of that murder is not here required; they are set out at length in *State* v. *Berard, supra.* Framed in the conjunctive, and in one count rather than in the two counts that careful pleading would indicate, the information charged the respondent with such assistance in two particulars, by threatening the life of Linda Badore, an eyewitness, to prevent her from telling the truth about the killing, *and* by helping Frank Berard destroy a car which had been used in the killing. The sufficiency of the evidence to establish the claimed threats is not seriously questioned by the respondent, although he does attack the admissibility of some of it. He claims now, however, as he did below by several motions to strike that allegation, that there was insufficient evidence to establish his claimed complicity in the burning of the car, even considering some that was improperly admitted. Since the case was submitted to the jury on both claims with the instruction to find the respondent guilty if he did either one of the alleged acts, respondent claims the general verdict could have been based upon an allegation not supported by the evidence. The State agrees that the verdict must be set aside if there was not sufficient evidence on both allegations, and this is indeed a necessary conclusion, because under the conjunctive allegation and the court's instructions the guilty verdict could have been based on either or both allegations. This is not the situation of *State* v. *Wheeler,* 35 Vt. 261 (1862), where the presence of separate counts made it unnecessary to set aside a general verdict as to the ones supported by the evidence. Here, unlike *Wheeler,* the verdict must be set aside if, as respondent claims, there was insufficient evidence to implicate him in the burning of the car. Our analysis bears out his contention of insufficiency.

■ This Court has long adhered to the view that where evidence of guilt is entirely circumstantial the circumstances proved must exclude every reasonable hypothesis except the one that the defendant is guilty. *State* v. *Fox,* 123 Vt. 82, 181 A.2d 74 (1962). And this conclusion cannot be reached by basing one inference from established facts upon another inference. *State* v. *Marini,* 106 Vt. 126, 146, 170 A. 110 (1934). Under these tests the evidence was indeed sparse, and cannot support the verdict.

■ The evidence introduced at most indicates that Berard had a plan to burn the car, that Woodmansee came to the apartment where Berard was, and that they left shortly afterward, with Berard stating "I have no idea where to take it" and Woodmansee responding "Don't worry about it, I know." The only specific reference was to "it", not to any vehicle as such. Shortly thereafter Berard and Woodmansee left, Berard in the car later burned, Woodmansee in another. There was no evidence as to the direction taken by each. At a consistent time shortly thereafter the car was found ablaze in a rural area. There was no direct evidence that Woodmansee burned the vehicle or was present when it was burned. In fact, beyond testimony that the fire seemed to have started in the passenger compartment, there was no evidence of its cause. On this state of the evidence, we agree with respondent's contention that there is at best established a conjectural theory of his activity, which falls far short of excluding every other reasonable hypothesis. Even with Berard's objected to statement of intent, made outside respondent's presence, there was no evidence that respondent knew of any plan to burn the vehicle or participated in it. The possibility was indeed established, but "suspicion, however strong, will not take the place of evidence supporting his participation." *State* v. *Mecier,* 126 Vt. 260, 263, 227 A.2d 298 (1967). The allegation that he "helped" Frank Berard destroy the vehicle by burning can be sustained only by speculation and surmise. The conviction must be set aside and the cause remanded for new trial.

What we have said is sufficient to dispose of the immediate issue before us. But we are well aware of the prospect of retrial, and of the protracted nature of the first trial, of some two weeks duration. We will therefore comment on other

456

issues raised by the respondent, and thoroughly briefed by both parties, insofar as recurrence of the questions involved is likely.

■ Respondent has urged that the trial court abused its discretion in not permitting jurors to be separately examined on voir dire, because of the extensive publicity and widespread reputation of the respondent. He briefs that justice mandates employing the method of inquiry suggested by the *A.B.A. Standards Relating to Fair Trial and Free Press.* Some jurisdictions have indeed done so. But we have recently re-examined the matter, and declined to make such a procedure mandatory. V.R.Cr.P. 24. While the new criminal rules do not apply to the instant case, commenced before their effective date (V.R.Cr.P. 59), they do not mandate any great departure from prior practice, and no substantial procedural questions should result. Nothing in the present record shows such extraordinary circumstances as might require even a discretionary departure from the one employed by the trial court. In fact, before the jury was sworn respondent's counsel expressed contentment with the panel, an action we cannot assume to be purely formal when there was still opportunity to challenge for cause.

Other events and rulings during the course of the trial, however, require admonitory comment. While we are not here called upon to decide whether, standing alone, each error would be sufficiently prejudicial to warrant a new trial, or even to decide whether under *State* v. *Ovitt,* 126 Vt. 320, 229 A.2d 237 (1967), their cumulative effect would require such action, we are conscious of that danger in the event of their recurrence. Though we do not concur with respondent's comment, at sentencing, that the course of his trial was "similar to Amtrak," we cannot but note that the general conduct of the trial was, in many respects and varying degrees, prejudicial to the defense.

■ The principal State witness was Linda Badore, whom the respondent was accused of threatening. During the course of the investigation she had made several different statements, sworn and unsworn, which differed from her testimony in some respects and corroborated it in others.

Over objections relating to their obvious hearsay character they were admitted during the State's case, even outlined in its opening argument, as prior consistent statements. The State now seeks to justify their admission under a claimed exception to the general rules laid down in *State* v. *Turley*, 87 Vt. 163, 88 A. 562 (1913), which would permit their use where

> [T]he witness has been impeached by a previous showing of bias, interest or corruption or when it is charged that the testimony in question is a "recent contrivance." In general, the evidence may then be admitted solely to sustain the credibility of the witness.

*State* v. *Sullivan*, 24 N.J. 18, 130 A.2d 610, 622 (1957). Whatever the cogency of this argument, which the State refers to as "rehabilitation" of a witness, it has no application to the instant case. The impeachment referred to, or the claim of recent contrivance, can hardly be said to have transpired when the State made its opening argument. At that time these previous statements were copiously referred to over objection. Defense counsel correctly pointed out that the asserted purpose could not be a ground for admissibility when he had not yet even been heard, much less introduced evidence. And, similarly, they were admitted during the State's case in chief. Without deciding the close question of whether the time ever did arrive when they would have been admissible, certainly it had not arrived when the objections were made. This type of anticipatory rebuttal is another example of the "overkill" to which we made reference in *State* v. *Zeisner*, 133 Vt. 375, 340 A.2d 69 (1975). The foregoing considerations are equally applicable to testimony by witness Diane Ferrier that Badore had informed her of the alleged threat by Woodmansee. The trial court admitted this for the purported purpose of "corroborating" Badore. Having done so, we think erroneously, it did not advise the jury of the limited purpose of such admission.

The psychiatric testimony of Dr. William Woodruff has also become a focal point of this appeal. As noted, the testimony of Linda Badore was almost entirely the only direct evidence of threats to her by the respondent. As bearing on

her credibility, the witness was permitted to give his expert testimony that she had a narcissistic character disorder, having little conscience and a greater propensity for lying than the normal person. Where the outcome of the trial depends almost entirely on one person's testimony and that person's credibility becomes one of the principal issues in the case, the admission of such testimony is certainly within the sound discretion of the trial court. *United States* v. *Hiss,* 88 F.Supp. 559 (S.D.N.Y. 1950) ; *State* v. *Butler,* 27 N.J. 560, 143 A.2d 530 (1958). The limitation of its scope, however, is also within the discretion of the court. *State* v. *Teitle,* 117 Vt. 190, 196, 90 A.2d 562 (1952):

> The pursuit of a witness into the realm of collateral must, of necessity, end somewhere—or litigation would not.

Respondent complains that Dr. Woodruff, who had admittedly treated Badore on previous occasions since 1968 when she attempted suicide, was not permitted to testify to this history or his general familiarity with her records, but only to his examination for purposes of trial. *State* v. *Berard, supra,* would seem to be authority for this limitation, since it does not appear that his testimony would have been different in substance even with recital of this background. We cannot say that error appears from this limitation alone. But it does appear when the State, in its summation, was permitted over objection to attack the credibility of Dr. Woodruff's diagnosis because he made only one examination. Permitting such argument in the face of facts known to all counsel and the court is not consistent with fair and impartial trial. And the error is not cured by the general charge that arguments of counsel are not evidence, undirected to the particular argument.

The State argues to us, at length, that no error appears because "the court should understand that psychiatry is wizardry and not science, and should not be permitted in the future." It also argues that presenting psychiatric testimony to a jury is "an amateur's voyage on the fog-enshrouded sea of psychiatry." It makes this argument despite the fact that it admittedly did not attack the qualifications of Dr. Woodruff. We cannot concur, and judicially notice that psychiatry is a

recognized profession, with its qualified practitioners entitled to recognition as expert witnesses on the question of competency. The profession itself does not, as we understand it, make any claim that it is an exact science.

The respondent also briefs allegedly improper remarks made by the State's Attorney in argument and in questioning. These include a reference to the "Perkins murder", an unsolved crime without any shown relationship to the crime here in issue. An objection to this reference was overruled. Also cited are injections of personal opinion, contrary to *State* v. *Kelly*, 131 Vt. 358, 306 A.2d 89 (1973). Unbriefed, but noted on transcript examination, is the repeated and unrebuked argument by both the State's Attorney and his deputy on points arising during the trial, without any apparent reason for departure from the recommended procedure of hearing one counsel only. We note this, not as independent grounds for reversal, but as contributory to an atmosphere of partiality. Similarly prejudicial, to some degree at least, was the recurring practice of allowing the State to improve witnesses not on the list furnished the respondent, conditional on respondent being allowed to depose them prior to their appearance. To a single practitioner defending a complicated case alone the opportunity to pursue this avenue during recesses of the court is scarcely a fair and adequate opportunity for trial preparation.

During the trial the State decided to hold an inquest, under 13 V.S.A. §§ 5131–5137, to examine a prospective alibi witness, one Marion Hardy. Without going into all the details of this inquest as related to the Court by counsel, suffice it to say that it not only followed the usual procedure but was attended by other questioning and a polygraph test. The respondent timely moved to suppress all "fruits" of this inquest and says this should have been done upon the authority of the caveat by Mr. Justice Smith in *State* v. *Bleau*, 132 Vt. 101, 106, 315 A.2d 448 (1974):

> However, in a similar situation, where the holding of an inquest during trial resulted in an injustice to the defendant, we would be disposed to grant a new trial. The holding of an inquest, during trial, is not a practice

which meets with our full approval, and in other circumstances might well be prejudicial to a defendant.

The motion to suppress was denied by the trial court as a matter of law, without the taking of testimony as to attendant circumstances, after hearing the representations and arguments of counsel. In the general trial setting which we have outlined we might well conclude without more that the holding of the inquest was prejudicial to the respondent. Since we are reversing for other grounds, we need not reach that conclusion. But we would emphasize for purposes of retrial that the motion to suppress should be heard by the court, testimony taken as to all relevant circumstances, and appropriate findings and conclusions made. The procedure involved is too fraught with opportunity for abuse to deny a suppression motion as a matter of law.

■■■ Appellant has also briefed at length the admitted failure of the trial court, despite timely request, to instruct the jury that the testimony of an accomplice such as Linda Badore is to be received only with the greatest caution, and that the circumstances under which it enters the case are ordinarily such as tend to discredit it. No reason was given by the trial court for refusing so to charge. We have several times approved giving such a charge when the facts warranted it. *State* v. *Dana,* 59 Vt. 614, 10 A. 727 (1887); *State* v. *Reed,* 127 Vt. 532, 540, 253 A.2d 227 (1969). We have also held the rule to be one of practice, rather than one of law. *State* v. *Montifiore,* 95 Vt. 508, 116 A. 77 (1922); *State* v. *Coolidge,* 106 Vt. 183, 171 A. 244 (1934). On the circumstances here presented, we do not feel required to reconsider these holdings as respondent urges, and make reversal automatic on such an error standing alone, without a showing of prejudice. But we do agree that the refusal to give the requested charge was error, certainly contributing to the general trial setting which we have reviewed. We cannot agree with the argument of the State that it should not have been given because Badore was not an accomplice to the murder. Whether she was is indeed arguable, and depends largely on the amount of credence accorded her testimony. But she was, without question,

an accomplice to the general crime of assisting Berard to avoid arrest and conviction, the specific offense with which respondent was charged. At issue is only the question of whether she was a willing accomplice, or acting under duress. She had ample opportunity to reveal the murder to police officers long before respondent entered the picture at all. And whether she did not do so from fear, or from choice, was a question for jury determination. The jury should have been so advised, and instructed that if they found her to be in fact a willing accomplice her testimony was to be viewed with the degree of caution outlined in the cited cases.

█ Two further matters briefed require comment. Respondent urges that his sentence, not more than seven nor less than six years, violates the spirit and intent of 13 V.S.A. § 7031 as held in *In re Parent*, 125 Vt. 475, 218 A.2d 717 (1965), treating of identical minimum and maximum sentences. Without extended review of the question, the writer is authorized to state that a majority of the Court adheres to the view set forth in *In re Shequin*, 131 Vt. 111, 300 A.2d 536 (1973), that it does not.

█ Reversing and remanding for new trial vacates, of course, the sentence imposed by the trial court, but we consider one further point raised by respondent to prevent the recurrence of error. The sentence imposed was stated to be "consecutive to present sentence." At the time of sentence, respondent was under no sentence from the Chittenden District Court, but was on parole after serving 35 months of a sentence imposed by the Addison District Court. The offense here alleged was committed while on such parole.

The sentence as imposed was contrary to the provisions of 28 V.S.A. § 554, then in effect, allowing the parole board to permit the serving of such sentences concurrently. Previous discretion of the trial court in this respect was removed effective July 1, 1972. And even had the Chittenden District Court imposed the original sentence, it would have been powerless to terminate the existing parole. Such termination is the administrative function of the parole board (28 V.S.A. § 551) and not the function of the trial court, much less another. *State v. Harbaugh*, 132 Vt. 569, 580–81, 326 A.2d 821 (1974).

We are, therefore, at a loss to understand the intent of the trial court here in imposing the sentence which it did. Whatever such intent, it would have required vacating, even without reversal.

*In No. 182–72, the appeal is dismissed. In No. 173–72, the complaint is dismissed. In No. 74–73, the sentence is vacated, the judgment reversed, and the cause remanded for further proceedings consistent with this opinion.*

### On Motion for Reargument, No. 74–73

The motion as presented in substance merely attempts to present de novo matters originally briefed and argued at length. The presentation encompasses no issues not previously considered by the Court. On the principal point of decision it continues to ignore the distinction between separate counts in an information and varying allegations in the same count, despite concession by the State on original argument that a shortage of evidence with respect to either particular act alleged to make the respondent an accessory would be fatal to its claim for affirmance. We have not held the information defective; we have only held the evidence insufficient as to one allegation upon which the general verdict could have been based, under the given instructions.

The motion does point out, correctly, that the inquest held to examine the witness Hardy was not held during trial, but several days before. Reversal was not grounded upon this inquest, but we perceive no reason to alter our original conclusion that a factual hearing should have been held on respondent's motion to suppress, instead of denying it as a matter of law. The validity of respondent's claim of coercion under color of law should have been factually determined, regardless of the time discrepancy.

*The motion for reargument is denied. Let full entries go down.*