### State of Vermont v. Diane Corliss

[539 A.2d 557]

No. 85-106

Present: **Allen, C.J., Peck, J., and Barney, C.J. (Ret.) and Keyser, J. (Ret.), Specially Assigned.**

Opinion Filed December 18, 1987

*Robert Andres,* Chittenden County Deputy State's Attorney, and *Andrew Lichtenberg,* Law Clerk (On the Brief), Burlington, for Plaintiff-Appellee.

*David W. Curtis,* Defender General, and *William A. Nelson,* Appellate Defender, Montpelier, for Defendant-Appellant.

**Peck, J.** Defendant appeals from her conviction for burglary following trial by jury in the Vermont District Court. We reverse and remand for a new trial.

Defendant raises two issues for consideration. She argues that the incident in question was comprised of two allegedly criminal acts rather than one and that either the State should have been required to elect the act it intended to rely upon for conviction, or the court should have required the jury to return a special verdict. Defendant also assigns error to the trial court's failure to instruct the jury pursuant to V.R.Cr.P. 26(c) that proof of the Moose Club burglary had been admitted for a limited purpose.[1]

In the information, the State charged defendant with a single burglary of the Watkins' residence on August 23, 1982. The transcript reveals that defendant telephoned her mother's home in Massachusetts on August 22, 1982. During the course of this phone call defendant spoke with one Mark Gilday. Defendant suggested that Gilday come to Vermont in order to burglarize the Burlington Moose Club. In the event that the Moose Club enterprise failed, defendant proposed an alternative plan to burglarize the home of her former employer, Mrs. Watkins.

On August 23, 1982, Gilday, defendant's brothers, Doyle and Ronald Kelly, as well as defendant's mother, May, all drove to defendant's home in Milton, Vermont. At approximately midnight a group comprised of defendant, May, Doyle, Ron and Gilday drove to the Moose Club in Burlington. Gilday gained entrance to the club through a window. He proceeded to a room which contained a strongbox full of money. After unsuccessfully attempting to break into the strongbox, Gilday took a bottle of whiskey and four dollars in tips from the bar. He then left the club and rejoined the group, at which time they returned to defendant's home.

Once at the defendant's home, Gilday expressed his anger over the fruitless Moose Club break-in. Defendant responded by telling Gilday about her former employer's home once again. Defendant explained that the house would be empty that night and that

---

[1] In light of our disposition of these two issues, we need not address the other issues raised by defendant regarding the propriety of the trial court's denial of the jury's request to adjourn for the night, the court's repeated instructions to the jury that "it had a duty to decide," and, finally, that the court lacked jurisdiction for imposing a jail sentence when in pretrial negotiations the court indicated a willingness to impose only a fine.

there must have been something of value in the house because a neighbor checked it every morning between seven and seven-thirty.

Gilday, Doyle, May and defendant then formulated a plan to burglarize the Watkins' residence. Gilday and Doyle were to break into the residence, and defendant was to drive the group to and from the scene.

The plan was instituted, and Gilday and Doyle broke into the Watkins' residence, ransacking several rooms in their search for money. Doyle found a purse containing envelopes full of ten and twenty dollar bills. After about an hour, both men left the house and met defendant in the car.

The group drove to defendant's house to divide the money, May and defendant each getting 300 dollars, Doyle and Gilday splitting 1400 dollars. After a period of drinking, Ronald began to complain that he did not receive any of the proceeds of the burglary.

Consequently, Gilday, Doyle, Ronald and May decided to return to the Watkins' residence a second time because several rooms went unsearched during the first entry. More cash was found, and the money was once again divided. Each of the parties, including defendant, again received a share. However, it appears that defendant neither encouraged this second enterprise nor assisted in its completion.

■ Defendant's first assignment of error is that the State should have been required to elect between the two incidents, or the jury should have been instructed that they all had to agree that the defendant had committed the same act in order to find her guilty. We agree.

We have stated that " '[a]s a general rule, where the information alleges one unlawful act and the evidence reflects two or more such acts, the State can obtain only one conviction and should be required to elect which act it will rely upon for conviction.' " *State* v. *Bonilla,* 144 Vt. 411, 413-14, 477 A.2d 983, 985 (1984) (quoting *State* v. *Bailey,* 144 Vt. 86, 98, 475 A.2d 1045, 1052 (1984)). This rule is designed to protect a criminal defendant from the danger that some jurors will convict based upon evidence of one act while the balance of the jury will convict upon evidence submitted for other acts. *State* v. *Bailey,* 144 Vt. at 98, 475 A.2d at 1052 (citations omitted). An analogous danger is that "jurors will be swayed by the quantum of proof introduced as to

all the acts when, in fact, there has been insufficient proof on any one of the alleged acts standing alone." *Id.*

In *Bailey*, defendant committed repeated sexual assaults upon a single victim over the course of an hour and a half. *Id.* at 99, 475 A.2d at 1053. Under those circumstances, we held that the many acts committed constituted one continuous felonious act and that it would have been unreasonable to compel the prosecution and the victim to delineate each act. *Id.*

Here, the State relies upon *Bailey* and maintains that the acts in question are so related in time and circumstances that they constitute one felonious act. Therefore, the State argues that the two incidents in the present case fall within the exception to the general rule requiring election.

We cannot say, however, that the criminal acts here were so closely related in time or circumstance so as to constitute one felonious act. We note that a burglary is complete once a building has been unlawfully entered with the intent to commit a crime therein. Cf. *State* v. *Hart*, 119 Vt. 54, 57, 117 A.2d 387, 389 (1955). The evidence adduced at trial clearly shows two separate entries into the Watkins' residence. Each separate entry resulted in the theft of sums of money. While it may be the same general scheme, each burglary of the Watkins' residence was a separate and distinct criminal transaction. Therefore, we find that the events in question constitute two separate acts sufficient to mandate an election.[2]

Defendant next takes exception to the trial court's failure to instruct the jury regarding the limited purpose for which evidence of the Moose Club burglary was admitted pursuant to V.R.Cr.P. 26(c).

Here, the court admitted evidence of the Moose Club burglary after the State argued that it would demonstrate the existence of a plan and motive for the Watkins' burglary. The court gave no limiting instruction either when the evidence was received or at the close of evidence.

---

[2] Appellant argues on the authority of *Woodmansee* v. *Stoneman*, 133 Vt. 449, 454, 344 A.2d 26, 29 (1975), that we should grant a judgment of acquittal since evidence of two acts was submitted to the jury but there is insufficient evidence to support both allegations. We disagree. In *Woodmansee* this Court did not enter a judgment of acquittal but, rather, "reversed and remanded the cause for new trial" upon finding insufficient evidence to implicate defendant on one of two alleged violations submitted to the jury. *Id.* at 455, 344 A.2d at 30.

"The most elemental rule of statutory construction is that the plain meaning of the statute controls." *Heisse* v. *State*, 143 Vt. 87, 89, 460 A.2d 444, 445 (1983). V.R.Cr.P. 26(c) states in relevant part: "After the close of the evidence, the jury *shall be instructed* on the limited purpose for which the evidence was received and that the defendant cannot be convicted for a charge not included in the indictment or information." (Emphasis added). We find that the plain meaning of V.R.Cr.P. 26(c) clearly requires the trial court to give the jury limiting instructions upon the close of evidence.

*Reversed and remanded.*