# State of Vermont v. William Verrinder

[637 A.2d 1382]

No. 92-484

Present: Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.

Opinion Filed December 27, 1993

*John T. Quinn,* Addison County State's Attorney, Middlebury, for Plaintiff-Appellee.

*Charles S. Martin* of *Martin & Paolini,* Barre, for Defendant-Appellant.

**Allen, C.J.** Defendant William Verrinder appeals his conviction for second-degree murder and sentence to a term of twenty years to life. We affirm.

At around 6:30 in the evening of July 29, 1991, defendant shot and killed Kenneth Bullock. Defendant is a Vietnam veteran

who has experienced the symptoms of post-traumatic stress syndrome (PTSD). He also suffers from severely impaired heart function that limits his ability to engage in activities taxing to his cardiovascular system. In the fall of 1990, while working as a bartender at the Middlebury chapter of the Veterans of Foreign Wars (VFW), defendant developed a close friendship and spent considerable time with Debra Bullock, the wife of the victim.

Kenneth Bullock was a physically imposing figure who drank heavily and regularly, and often became aggressive and confrontational when intoxicated. Bullock's wife, stepdaughter and son testified in graphic detail to physical abuse that he had inflicted on them. Sometime in late 1990 or early 1991, Debra Bullock obtained a relief-from-abuse order which forbade him to approach his family or their house. Bullock became aware of defendant's relationship with Debra, and at least twice threatened to kill defendant. Debra warned defendant that she thought Bullock carried a pistol.

Late in the afternoon of July 29, 1991, defendant and Debra Bullock arrived at her Bridport home and found Bullock, who had come by to retrieve some belongings, standing across the street from the house. At Bullock's request, she agreed to accompany him as he tried to sell several ceramic figurines. Before leaving, she told defendant that her husband still wanted to kill him and requested that defendant meet her at the house when she returned within the half hour.

The trip was fairly peaceful at the outset, but when Debra rebuffed Bullock's pleas for reconciliation, he became agitated, screamed at her, and accused her of sleeping with defendant. They made several stops during the trip. At one stop Debra called the VFW looking for defendant; she testified that she never spoke to him, but the VFW bartender testified that defendant took the call and left immediately thereafter. When the trip resumed, Bullock started driving erratically and struck Debra several times. By the time the car passed Debra's house, defendant had returned and was waiting by his truck. He saw Bullock's car speed past, Debra and Bullock struggling violently inside. Defendant pursued them in his truck.

Bullock's car came to a stop on a nearby road and Debra crawled out the passenger-side window. Bullock continued

down the road for 300 to 500 feet, made a U-turn and stopped. According to defendant and Debra, defendant slowed to a stop to check on Debra, who said that Bullock was going to kill her. A witness who had stopped to help Debra testified that defendant never stopped, but instead sped down the road toward Bullock's car. Defendant crossed over into the opposite lane and the vehicles collided.

Defendant testified that Bullock emerged from his car enraged, swearing he would kill him. Defendant got out of his truck and stood by the door. The men were separated by their vehicles. Defendant took his .45 caliber pistol, which he had left in the truck some time before to be repaired, and testified that he warned Bullock to stay away. Bullock started toward defendant, defendant shot him, and Bullock dropped to the ground not far from the driver-side door of his car. Defendant then went to the back of his truck and sat down in an effort to reduce his heart rate. There was testimony that only a couple of seconds elapsed between the time of the collision and the shot. Defendant believed that his heart condition prevented him from fleeing and would have killed him had he engaged in physical combat with Bullock.

Defendant was charged with first-degree murder and claimed self-defense and defense of Debra Bullock. At trial, defendant's version of events was contradicted by evidence given by other witnesses at the scene. He was convicted of second-degree murder and sentenced to twenty years to life in prison.

On appeal, defendant alleges six errors: (1) the trial court improperly excluded evidence of an earlier alleged assault on a third person by the victim; (2) defendant allegedly made a statement to Debra Bullock just after the shooting that should have been admitted under an exception to the hearsay rule; (3) the trial court abused its discretion by not permitting an expert witness on battered woman syndrome to express an opinion that Debra Bullock suffered from the condition; (4) the State engaged in prosecutorial misconduct at trial during the taking of evidence and in closing argument; (5) the trial court should have specifically instructed the jury that evidence of specific incidents of violence on the part of the victim could be used in determining whether the victim was the first aggressor; and (6) in sentencing him, the trial court did not make written findings

on all mitigating factors offered by defendant, made a finding of an aggravating factor not mentioned in the sentencing hearing, and abused its discretion by not imposing a sentence reduced from the presumptive term in light of alleged mitigating factors. We examine each point in order.

## I.

Defendant first claims that the trial court erroneously prevented a witness from testifying because of a pretrial ruling limiting evidence of the victim's character to specific acts of violence known to defendant and resulting in bodily harm. He maintains that as a result of this ruling, a Dr. Stein could not testify to an incident in which he allegedly was assaulted by Kenneth Bullock. In the motions hearing, the State moved to exclude Stein as a defense witness because defense counsel had provided notice of the witness only four days before. The State had no prior notice of Stein as a witness or his proposed testimony, and Stein would have been available only for a telephone deposition until sometime during the period scheduled for trial.

Defendant represented that this incident demonstrated Bullock's aggressive nature, and was probative on the issue of whether Bullock was the first aggressor in his confrontation with defendant on the day he was killed. As such, the proffered evidence would be admissible under the V.R.E. 404(a)(2) exception to the rule excluding character evidence to prove action in conformity therewith.[1]

The court granted the State's motion to exclude Stein as a witness, for two reasons: (1) the State had insufficient notice of the witness, and (2) defendant did not witness the alleged assault, and as a result Stein's recounting of the incident itself was collateral and would lead to confusion of the issues. The court went on to say that defendant could testify to the incident if he had learned of it through Debra Bullock before the shooting. Defense counsel acknowledged that defendant was aware

---

[1] In relevant part, V.R.E. 404(a)(2) provides that: "Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except: . . . [e]vidence of a pertinent trait of character of the victim of the crime offered by an accused . . . ."

of this allegedly aggressive conduct at little league games, but defendant never testified to it at trial.

The trial court has broad discretion to sanction violations of discovery rules, and we limit review to an abuse of that discretion. *State v. Hugo*, 156 Vt. 339, 344, 592 A.2d 875, 879 (1991); see also V.R.Cr.P. 16.2(g). Rule 16.1(c) of the Rules of Criminal Procedure requires the defendant, upon timely request by the prosecution, to disclose witnesses the defendant plans to call at trial. The rule is intended to assist the prosecution in preparing for trial, *State v. Meyers*, 153 Vt. 219, 224, 569 A.2d 1081, 1085 (1989), and to provide an adequate opportunity to depose or interview prospective defense witnesses. Thus, if a witness is not timely revealed to the State, the trial court may limit the witness' testimony or exclude the witness altogether. See V.R.Cr.P. 16.2(g); *State v. Edwards*, 153 Vt. 649, 649, 569 A.2d 1075, 1076 (1989).

In *Hugo*, this Court upheld the trial court's exclusion of a defense witness who was disclosed to the State on the first day of trial, well after the jury drawing and discovery deadline. 156 Vt. at 344, 592 A.2d at 879. The exclusion order was valid because the witness, the defendant's father, could have been disclosed earlier, and because the court had a reasonable belief that the proposed testimony would be cumulative and repetitious. *Id.* at 344–45, 592 A.2d at 879.

In this case, defendant concedes that notice of Dr. Stein as a witness was late, but argues that the State had adequate opportunity to depose Stein by telephone prior to his testifying at the trial. The record does not disclose why defense counsel did not discover the Stein incident sooner than one week before trial; in that respect this situation differs from *Hugo*, in which the late notice was attributed to the fault of defense counsel. The result in *Hugo*, however, also turned on the fact that the proposed witness' testimony would not have substantially assisted the jury. Analogously, here the court noted that the Stein incident was a collateral matter, and that putting Stein himself on the stand would confuse the issues and would not assist the jury in its deliberations. More importantly, the court allowed the defense to introduce the substance of Stein's proposed testimony by ruling that defendant could testify to the alleged inci-

dent and how he became aware of it. Therefore, the exclusion of Stein himself as a witness was a reasonable exercise of discretion.

Defendant also raises for the first time on appeal the argument that the testimony should have been admitted under V.R.E. 404(b), as evidence that Bullock had the motive, opportunity and plan to kill defendant. However, "[i]f a specific ground for admission is claimed in the offer of proof but is not applicable, and the trial court excludes the evidence, the proponent cannot complain on appeal if there was another ground for admission." *Dean v. Arena*, 141 Vt. 647, 650, 450 A.2d 1143, 1145 (1982). We therefore do not consider this claim.

II.

Defendant next complains that the trial court should not have excluded as hearsay a statement that defendant made shortly after his final confrontation with Bullock. After shooting Bullock, defendant went to the back of his truck and sat on the tailgate. Debra Bullock witnessed the incident from at least 300 feet up the road, ran to the scene, and approached defendant, who allegedly told her, "I'm sorry, I didn't want to do that." At trial, defense counsel attempted to elicit this statement from Debra as an exception to the hearsay rule for: (1) a present sense impression under V.R.E. 803(1); (2) an excited utterance under Rule 803(2); and (3) a statement of then-existing mental condition under Rule 803(3). The court excluded the statement.

The trial court determines the admissibility of evidence, including preliminary questions of whether statements fall within exceptions to the hearsay rule. See V.R.E. 104(a). We will disturb the trial court's discretionary ruling only if that discretion has been abused. *State v. Ayers*, 148 Vt. 421, 424, 535 A.2d 330, 332 (1987). The ruling will stand if it has a reasonable basis. *State v. Goodrich*, 151 Vt. 367, 375, 564 A.2d 1346, 1351 (1989).

For a hearsay statement to qualify as a present sense impression, the statement must describe or explain "an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." V.R.E. 803(1). In this case it is undisputed that defendant's statement was not made while he was perceiving the event. Testimony shows that Debra

Bullock had to run several hundred feet to reach defendant at his truck, a significant time lapse between the shooting and the statement. That alone provided the trial court with a reasonable basis to conclude that the statement was not made immediately after the event perceived. The trial court did not abuse its discretion by ruling the statement inadmissible as a present sense impression.

Although it is a closer question, we also believe the court could properly hold that the statement was not an excited utterance. This exception requires that the statement relate "to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." V.R.E. 803(2). In contrast to the emphasis on contemporaneousness for present sense impressions, the prime consideration for the excited utterance exception is the declarant's condition: the statement must be uttered while the effect of the exciting event forestalls the possibility of reflection or fabrication. See *State v. Shaw*, 149 Vt. 275, 281, 542 A.2d 1106, 1109 (1987).

■ Since admissibility under Rule 803(2) hinges on the condition of the declarant, the proponent of the statement must provide sufficient evidence for a preliminary determination that the declarant was still gripped by the exciting event. *United States v. McLennan*, 563 F.2d 943, 948 (7th Cir. 1977), *cert. denied*, 435 U.S. 969 (1978). For example, in *State v. Ayers* evidence that the declarant was "visibly shaken . . . extremely nervous, upset, . . . bordering on tears off and on" amply supported a finding that the declarant was under the stress of excitement. 148 Vt. at 423, 535 A.2d at 331. In contrast, in *State v. Roy*, 140 Vt. 219, 225, 436 A.2d 1090, 1092 (1981), this Court found no evidence that a child declarant was "stunned or in a state of emotional upheaval" during a conversation with police, which prevented the child's statements from qualifying as excited utterances. In interpretations of the corresponding Federal Rule of Evidence 803(2), federal courts have also required sufficient foundation evidence for the preliminary determination that the declarant was under the influence of the exciting event. See, e.g., *United States v. Bailey*, 834 F.2d 218, 228 (1st Cir. 1987) (testimony that declarant nervous or distraught, with reasonable basis for continuing emotional upset, often enough); *McLaughlin v. Vinzant*, 522 F.2d 448, 449–50 (1st Cir.) (state-

ment admissible based on testimony that declarant appeared "shaken up," "nervous," or "hysterical"), *cert. denied,* 423 U.S. 1037 (1975).

The trial court's ruling in this case was based on the lapse of time between the event and the utterance, a lack of foundation establishing that defendant was under the stress of excitement, and a finding that the content of the statement showed contemplation. Defense counsel attempted to introduce the statement through the testimony of Debra Bullock, who made no observations about defendant's demeanor while on the stand. A witness on the scene almost immediately after Debra Bullock's arrival described defendant as calm and rational as he sat on the tailgate of his truck sipping iced tea. Though defense counsel later attempted to establish that defendant's apparently calm demeanor could be explained as post-traumatic stress syndrome resulting from combat experience in Vietnam, defendant himself testified that he was not suffering from the condition at the time of the shooting or thereafter. Based on the lack of foundation evidence, the trial court could reasonably have found that defendant was not under sufficient stress in the moments after the shooting to quell his reflective faculties. The court did not abuse its discretion in holding that the proffered statement was not an excited utterance.

■ Finally, the timing and content of the statement reasonably precluded its admission as a statement of a then-existing mental condition under V.R.E. 803(3). This exception applies to a "statement of the declarant's then-existing state of mind, . . . but not including a statement of memory or belief to prove the fact remembered or believed." V.R.E. 803(3). The proponent must show that: (1) the statement was contemporaneous with the mental state to be proved, (2) the declarant had no time to fabricate or misrepresent thoughts, and (3) the state of mind is relevant to an issue in the case. *United States v. Carter,* 910 F.2d 1524, 1530 (7th Cir. 1990), *cert. denied,* 499 U.S. 978 (1991).

There is no dispute that the question of intent is relevant to the charge of murder. The court found, however, that the content of the statement and the lapse of time after the shooting too strongly suggested fabrication. In cases in which this Court has held a statement of intent admissible under the precursor

to V.R.E. 803(3), the statements *preceded* the event. See *State v. Ryder*, 80 Vt. 422, 424–26, 68 A. 652, 653–54 (1908); *State v. Howard*, 32 Vt. 380, 383, 404 (1859), *overruled on other grounds, State v. Briggs*, 152 Vt. 531, 539 n.3, 568 A.2d 779, 783 n.3 (1989); see also *State v. Cato*, 574 A.2d 240, 242 (Conn. Ct. App.) ("An out-of-court statement made after the completion of a criminal act is not admissible under the state of mind exception as to the intent or motive underlying that completed act."), *cert. denied*, 576 A.2d 547 (Conn. 1990). We agree that the timing and content of the statement "I'm sorry, I didn't want to do that" does not satisfy the criteria for admission under the Rule 803(3) present-state-of-mind exception. There was no abuse of discretion that would permit us to disturb the trial court's decision. The statement was properly excluded.

## III.

■ Defendant's third claim of error arises from a ruling that precluded an expert witness from expressing an opinion that Debra Bullock suffered from battered woman syndrome. On cross-examination, the State had attempted to raise doubt that Debra was in a life-threatening situation on the afternoon of the shooting by questioning her failure to escape from her husband, despite opportunities to seek help during the several stops she and Bullock made. The court held that the expert's description of the syndrome would permissibly enhance Debra Bullock's credibility and ensure that the jury was not misled by the prosecution's attempted impeachment. Defendant contends that the limitation of Dr. Searles' testimony unfairly prevented him from fully rehabilitating Debra's credibility.

Under V.R.E. 702, expert testimony may be permitted if "specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." In essence, the trial court held that a qualified expert's description of battered woman syndrome would suffice to help the jury understand Debra Bullock's actions, and hence bolster her credibility. Had Dr. Searles been permitted to testify that Debra suffered from the syndrome, Debra's credibility might have been enhanced, but at the risk of distracting the jury from the purpose of the evidence of Bullock's character—establishing defendant's state of mind and whether Bullock was the first aggressor.

The fact that expert testimony "may" be admitted under Rule 702 leaves the question of admissibility within the discretion of the court. The record shows that Dr. Searles fully explained the nature and symptoms of the syndrome, providing the jury with a basis for a reasonable inference as to why Debra failed to seek help despite her protestations of extreme danger during the ride with Bullock. The defense could and did argue that Debra suffered from the syndrome. Though Debra's credibility might have been further enhanced by the opinion testimony, the court considered it too collateral to the relevant issues. In effect, the court's ruling struck a balance between providing the defense with rehabilitation testimony and forestalling inflammatory evidence of the victim's abusive conduct not relevant to defendant's self-defense. Since the basis for limiting the expert testimony was reasonable, there was no abuse of discretion.

## IV.

Defendant next levels the serious allegation that prosecutorial misconduct deprived him of a fair trial and warrants reversal of his conviction. Defendant concedes that counsel did not object to specific instances in the "pattern of ethical misconduct," but argues that collectively and cumulatively they constitute reversible plain error. Specifically, the alleged misconduct was manifested: (1) in disruption of the flow of evidence in defendant's case in chief, and (2) in improper comment in the State's closing argument. To assess the validity of a claim of overall misconduct, we examine each specific claim, bearing in mind that "a prosecutor is the servant of the law and has a constitutional as well as an ethical responsibility to respect the accused's right to a fair trial." *State v. Goshea*, 137 Vt. 69, 76, 398 A.2d 289, 293–94 (1979).

Defendant first argues that the prosecution engaged in a pattern of aggressive, continuous, "machine-gun" objections and interruptions, which stymied his presentation of evidence of self-defense. Because defendant raises these issues for the first time on appeal, we review them only if they constitute plain error, V.R.Cr.P. 52(b), the "rare and extraordinary case" of obvious error "so grave and serious as to strike at the very heart of a defendant's constitutional rights or adversely to affect the

fair administration of justice." *State v. Ramsay*, 146 Vt. 70, 75, 499 A.2d 15, 18 (1985).

■ We find no basis for a claim of prosecutorial misconduct during the evidentiary portion of the trial. Though the State made a large number of objections during the defendant's presentation of evidence, at least half of which were sustained, nothing suggests that the objections were groundless, in bad faith, or frivolous. The State is authorized and obliged to prosecute earnestly and vigorously through legitimate means and methods. *State v. Forte*, 154 Vt. 46, 50, 572 A.2d 941, 943 (1990). This includes interposing seasonable, meritorious objections. *Garrett v. State*, 105 So. 2d 541, 546 (Ala. 1958); see also *People v. Abernathy*, 217 N.E.2d 300, 302 (Ill. Ct. App. 1966); cf. *State v. Grayson*, 668 S.W.2d 153, 157 (Mo. Ct. App. 1984) (defense counsel "has a right, indeed a duty to object to impermissible testimony or argument in protecting [the] client's right to a fair trial"). Most of the objections went to the form of questions, and to questions and answers by defense counsel that exceeded the permissible scope of inquiry established by evidentiary rules or rulings on pretrial motions. The State's objections had merit and did not unfairly hinder defendant from presenting evidence to the jury.

■ Defendant also highlights an incident during the testimony of Debra Bullock as evidence of prosecutorial misconduct. At one point in the direct examination, as the witness recounted her attempt to escape from Bullock's car just before his confrontation with defendant, the State interrupted to request towels to absorb a spill from a leaking cup. Neither the court nor defense counsel called attention to the incident, and the witness continued with her testimony immediately. Though the prosecution might have taken care of the problem without drawing the court's attention to it, this appears to have been a minor interruption. In sum, we find that the objections and the "leaking cup" incident do not qualify as grave error that infringed defendant's constitutional rights or adversely affected the fair administration of justice. There was no prosecutorial misconduct amounting to plain error in the evidentiary portion of trial.

The second alleged incident of prosecutorial misconduct occurred during the State's rebuttal in closing argument. As a

rule, decisions regarding the propriety of closing argument fall within the discretion of the trial court. *State v. Francis*, 151 Vt. 296, 300, 561 A.2d 392, 395 (1989). The trial court, "which has observed the entire trial and the demeanor of the attorneys, can better gauge the impact of the allegedly prejudicial language than an appellate court reviewing a cold record." *State v. Cohen*, 157 Vt. 654, 655, 599 A.2d 330, 331 (1991) (mem.).

■ Defendant cites three specific instances in the State's rebuttal, in which counsel allegedly injected personal opinion, argued contrary to personal knowledge of facts, and commented on defendant's failure to produce evidence. In the first instance, the State argued:

I don't know what kind of person Ken Bullock is other than what has been told me during the course of this case.

. . . .

. . . And I'm not suggesting that Ken Bullock never inflicted any physical violence on anyone in his lifetime. I'm not suggesting that. I don't know to what extent he did or he didn't.

Defendant contends that this statement was an improper interjection of personal opinion, contrary to the State's knowledge of Bullock's violent character as evidenced by a final relief-from-abuse order against Bullock and pending alleged violations of that order. At trial the defense objected to the statement, and the objection was sustained with the specific instruction that the jury disregard personal references. Defendant did not object to the cautionary instruction or request any further relief. In the final charge to the jury immediately following closing arguments, the court explicitly warned the jury not to consider the arguments of counsel as evidence, and not to rely on the attorneys' recollection of evidence in their arguments.

We addressed a similar situation in *Deyo v. Kinley*, in which the defendant objected to an argument on damages in the plaintiff's rebuttal closing argument, which the defendant contended was completely without an evidentiary foundation. 152 Vt. 196, 201, 565 A.2d 1286, 1289 (1989). The trial court sustained the objection, and ruled that any error would be cured by its final charge to the jury not to consider the arguments of counsel as evidence. Jury instruction followed immediately after closing

arguments, and the defendant made no further objection. We concluded that the instruction sufficed to cure any error that might have been made in the plaintiff's closing argument. *Id.* at 203, 565 A.2d at 1291. Here, as in *Deyo*, the court's instruction immediately following the objection and the final instruction to the jury sufficiently countered any error in the argument.

The questionable statement here is not the type of statement made in *State v. Goshea* or *State v. Lapham*, 135 Vt. 393, 377 A.2d 249 (1977). In *Goshea*, the prosecution's comments, directly contrary to exculpatory evidence that the State had withheld from the defendant, warranted reversal. *Goshea*, 137 Vt. at 76, 398 A.2d at 294. In *Lapham*, this Court reversed because of the undue prejudice that resulted from the prosecution's characterization of the defendant's insanity defense as "a desperate effort to escape justice," and the trial court's failure to strike the comment and admonish the jury to disregard the comment. *Lapham*, 135 Vt. at 406–08 & n.2, 377 A.2d at 256–58 & n.2. In light of the fact that substantial evidence of Bullock's violent character was admitted into evidence, and that the jury was specifically instructed to disregard personal references, we believe that this statement about Bullock's character, though inappropriate, was not unfairly prejudicial. It does not rise to the level of reversible error.

Defendant's remaining two allegations of error in the State's closing argument were not raised at trial, so we review them only for plain error. *State v. Cohen*, 157 Vt. at 655, 599 A.2d at 331. "[P]lain error will be found only if the argument is so egregious that there is no room for doubt as to its prejudicial effect and this Court is convinced that affirmance would result in a miscarriage of justice." *Id.*

 Defendant first asserts that the prosecution misled the jury by suggesting the inference that Bullock left his home because of his wife's infidelity with defendant, not because he was ordered to leave as part of the relief-from-abuse order which the defense was not allowed to offer as evidence. The prosecution's statement was an inappropriate attempt to introduce an unwarranted inference, but was not so egregious as to deprive defendant of a fair trial. In *Woodmansee v. Stoneman*, 133 Vt. 449, 458, 344 A.2d 26, 31 (1975), testimony of the defendant's expert witness, a psychiatrist, had been limited to a single ex-

amination of the State's main witness, even though the psychiatrist was generally familiar with her psychological records. The State took advantage of this in closing to argue, over objection, that the expert's diagnosis was based on a single meeting with the witness, and hence was not credible. There we held that the argument could not be permitted "in the face of facts known to all counsel and the court," and that the general warning against taking the arguments of counsel as evidence did not cure the error. *Id.*

In this case, the State strongly implied that Bullock was driven from his home by his wife's infidelities, contrary to the fact known both to court and counsel that he left pursuant to a restraining order. As in *Woodmansee*, the court issued only a general instruction to the jury not to consider closing arguments as evidence. The statement was prejudicial to defendant, especially when taken in context of the prosecution's theory of a lovers' plot to eliminate Bullock. But unlike *Woodmansee*, there was evidence before the jury contrary to the State's argument, that Bullock was ejected from his home because of his own actions rather than his wife's infidelity. There was evidence of the restraining order, and Debra Bullock and her children testified to incidents of abuse by Bullock. *Goshea*, which also involved prosecutorial argument contrary to known fact, is also distinguishable because in that case the prosecutor wrongly kept the contradictory evidence from the jury. See *Goshea*, 137 Vt. at 76, 398 A.2d at 294 (argument "an open admission by the prosecutor of the exculpatory character of the evidence"). Though prejudicial and of questionable propriety, the statement in this case was not so egregious as to create a miscarriage of justice and deprive defendant of a fair trial.

Finally, defendant alleges that the State took unfair advantage of the pretrial ruling that precluded Dr. Searles from testifying to her opinion that Debra Bullock suffered from battered woman syndrome. Again, in the State's rebuttal closing argument, the prosecutor said to the jury:

> You never heard [that Debra Bullock was physically assaulted] . . . except from Debra Bullock's son and daughter. And no one came in here and said well, she told me that she got beat up every day. Nobody said that. There's no evi-

dence of any medical attention being sought by the victim of this terrible brutality that's been portrayed to you.

Defendant implicitly acknowledges the State's proffered basis for this statement—that no witness outside the family testified to having observed evidence of the alleged physical abuse at the time it was inflicted. Defendant asserts, however, that this absence of corroboration is consistent with battered woman syndrome, and that the jury could not appreciate the lack of corroboration because the expert was precluded from expressing the opinion that Debra Bullock suffered from the condition. Therefore, the State's attempt to use the absence of corroboration to impugn the credibility of defendant's witnesses was unfairly prejudicial.

We fail to see any error in this part of the prosecution's argument. As noted above, defendant's expert testimony was limited only with respect to offering a diagnosis, but defendant was free to argue that Debra Bullock was a battered woman, and the jury had sufficient evidence to make that inference. The defense also could have presented evidence that the absence of contemporary corroboration for acts of abuse was consistent with this condition. In sum, the prosecution's argument of a lack of contemporaneous corroboration of acts of physical abuse by Bullock was not unfairly prejudicial, and not plain error.

We conclude, then, that none of the alleged incidents of prosecutorial misconduct, considered alone, qualifies as plain error warranting reversal. Also, the record does not reveal that the prosecution had an overriding "studied purpose" to arouse unfair prejudice. *State v. Ramsay*, 146 Vt. at 76, 499 A.2d at 19. Though we disapprove of portions of the State's rebuttal closing argument, their combined effect does not amount to an egregious miscarriage of justice or denial of a fair trial. See *State v. Cohen*, 157 Vt. at 655, 599 A.2d at 331 (disapproval of parts of prosecution closing argument does not necessarily require reversal).

## V.

Defendant next alleges that the court should have instructed the jury specifically that, in assessing the claim of self-defense, it could consider evidence of Bullock's aggressive character in

determining whether Bullock actually was the first aggressor. Defendant contended that because the specific aggressive acts were admitted into evidence pursuant to V.R.E. 405(b), the court was required to charge that they could be considered on the issue of who was first aggressor, and not just to determine whether defendant reasonably believed that the victim threatened him with mortal peril. Defendant also argued that because this character evidence was permissible under V.R.E. 404(a)(2) to show that Bullock acted in conformity with that character on a particular occasion, the charge should reflect that.

The court declined defendant's request, but charged:

> You may take into consideration what the defendant knew about the victim at the time of the killing. You may consider such factors as what their relationship or interaction had been, any aggressive or hostile conduct if any by the victim, and such other factors as you consider relevant.
>
> In considering who initiated the confrontation, you may consider all the surrounding facts and circumstances as . . . presented by the evidence.
>
> . . . .
>
> The defendant as aggressor. The law of self-defense does not imply the right of attack in the first instance, nor does it permit an action to be done in retaliation or for revenge. If you find that the State has proven beyond a reasonable doubt that the defendant was the aggressor in the confrontation, then the defendant's actions in shooting Kenneth Bullock were not done in self-defense or defense of another. When determining the issue of who initiated the confrontation, you can consider all the surrounding facts and circumstances.

In reviewing the sufficiency of jury instructions, we consider them as a whole and not piecemeal. *State v. Davis*, 157 Vt. 506, 511, 601 A.2d 1381, 1383 (1991). The instructions must accurately state the law on every theory fairly put forward by the evidence. *State v. Pelican*, 160 Vt. 536, 540, 632 A.2d 24, 27 (1993); see *State v. Percy*, 158 Vt. 410, 419, 612 A.2d 1119, 1125 (1992). Within those parameters, the trial court may exercise its discretion in the wording of the jury charge; a defendant is not entitled to have specific language included. *Pelican*, 160 Vt. at 540, 632 A.2d at 27; *Percy*, 158 Vt. at 419, 612 A.2d at 1125.

 In light of the above standard, the trial court did not abuse its discretion in denying defendant's proffered charge. The court correctly instructed the jury that the defense of self-defense requires that the victim be the actual first aggressor. The judge explicitly stated at two separate points in the charge that the jury could consider all surrounding facts and circumstances as presented by the evidence in determining who initiated the confrontation. Nothing in the charge limited the jury's use of any evidence of the victim's character, so they were at liberty to consider that evidence to determine who was the aggressor. Therefore, we find no error in the court's refusal to include defendant's requested instruction.

## VI.

Defendant's final claim of error is that the trial court abused its discretion by imposing the presumptive sentence for second-degree murder of twenty years to life. Under 13 V.S.A. § 2303(b):

> The punishment for murder in the second degree shall be imprisonment for life and for a minimum term of 20 years unless the court finds that there are aggravating or mitigating factors which justify a different minimum term. . . . If the court finds that the mitigating factors outweigh any aggravating factors, the minimum term may be set at less than 20 years but not less than 10 years.

Thus, the statute grants discretion to reduce the presumptive sentence only if mitigating factors outweigh aggravating factors. Moreover, the statute mandates that the trial court "shall . . . enter specific written findings concerning aggravating and mitigating factors," *id.* § 2303(c), according to the list of factors supplied in § 2303(d), (e).[2]

---

[2] 13 V.S.A. § 2303(d) provides:
Aggravating factors shall include the following:
(1) The murder was committed while the defendant was in custody under sentence of imprisonment.
(2) The defendant was previously convicted of a felony involving the use of violence to a person.
(3) The murder was committed while the defendant was engaged in the commission of, or in an attempt to commit, or in immediate flight after committing a felony.

At the sentencing hearing, the court specifically stated that it would rule on aggravating and mitigating factors in writing, but that it would first share its decisions "in a general way, to be followed more specifically by findings." The trial court considered each of the statutory mitigating and aggravating factors in order. After reviewing the aggravating factors, the court said that it had not been persuaded that "there are any aggravating factors that the Court is going to include in its calculations of determining variance from the minimum sentence." The court then proceeded through the list of mitigating factors.

The record is unclear as to the court's decision on the first mitigating factor, the lack of a significant history of prior criminal activity. The court agreed that defendant's heart condition constituted a physical disability, but declined to find that this significantly reduced his culpability. The court specifically acknowledged the effect of post-traumatic stress syndrome, but rejected the claim that defendant acted under duress, coercion, threat or compulsion insufficient to constitute a defense which significantly affected his conduct. The court also clearly stated

---

(4) The victim of the murder was particularly weak, vulnerable or helpless.

(5) The murder was particularly severe, brutal or cruel.

(6) The murder involved multiple victims.

(7) The murder was random, predatory or arbitrary in nature.

(8) Any other factor that the state offers in support of a greater minimum sentence.

13 V.S.A. § 2303(e) provides:

Mitigating factors shall include the following:

(1) The defendant had no significant history of prior criminal activity before sentencing.

(2) The defendant was suffering from a mental or physical disability or condition that significantly reduced his or her culpability for the murder.

(3) The defendant was an accomplice in the murder committed by another person and his or her participation was relatively minor.

(4) The defendant, because of youth or old age, lacked substantial judgment in committing the murder.

(5) The defendant acted under duress, coercion, threat or compulsion insufficient to constitute a defense but which significantly affected his or her conduct.

(6) The victim was a participant in the defendant's conduct or consented to it.

(7) Any other factor that the defendant offers in support of a lesser minimum sentence.

that the victim did not consent to or participate in the conduct leading to his death. The remaining offers of mitigating factors were considered and rejected.

 The written findings on mitigating and aggravating factors contained the following:

Upon the evidence at the trial and the sentencing hearing the Court finds the following mitigating and aggravating factors:

1. The Defendant placed himself in the situation where the actual outcome was likely to occur.

2. The Defendant had no significant criminal record or activity prior to this offense.

Defendant contends that the court improperly considered the first of these two findings as an aggravating factor under 13 V.S.A. § 2303(d)(8), which includes "[a]ny . . . factor that the state offers in support of a greater minimum sentence." Defendant asserts that any evidence that he acted to produce "a deadly confrontation" was offered at trial only to rebut the theory of self-defense, not to increase his sentence. The record shows otherwise. The State specifically adopted the list of aggravating factors set forth in the presentence investigation report, including the disputed factor. The State also argued in the sentencing hearing that the total of defendant's activity would result in "a deadly confrontation." This evidence was not offered merely to rebut defendant's self-defense claim, and therefore the finding was properly used as an aggravating factor under the § 2303(d)(8) catchall.

 Defendant also complains that the trial court erred by not making findings on the recommended mitigating factors listed in 13 V.S.A. § 2303(e):

(2) The defendant was suffering from a mental or physical disability or condition that significantly reduced his . . . culpability for the murder.

. . . .

(5) The defendant acted under duress, coercion, threat or compulsion insufficient to constitute a defense but which significantly affected his . . . conduct.

(6) The victim was a participant in the defendant's conduct or consented to it.

The record clearly shows, however, that the court considered each of defendant's proposed mitigating factors in the course of the sentencing hearing. Section 2303(b) mandates the presumptive sentence "unless the court finds there are aggravating or mitigating factors." 13 V.S.A. § 2303(b). In this context, findings represent conclusions, not a generalized discussion of factors proposed by either the defendant or the State. Moreover, the record shows that ample evidence existed to support the findings the court made. We hold that none of the findings was clearly erroneous. In light of the fact that the aggravating and mitigating factors balanced, the trial court could not depart from the mandatory sentence imposed in § 2303(b) of twenty years to life. See *id.*

We note, however, that the trial court did not clearly categorize its written findings as "mitigating" or "aggravating." Considering the importance of these findings, it would be better that aggravating and mitigating factors be clearly denominated.

*Affirmed.*