2006 VT 96

**STATE of Vermont v. Barry BABSON**

[908 A.2d 500]

No. 05-140

¶ 1. August 31, 2006. Defendant Barry Babson appeals from convictions of one count of sexual assault and one count of aggravated sexual assault. Defendant argues that he was denied a fair trial when the trial court improperly admitted hearsay statements made by the victim to an examining physician and, in closing argument, the prosecutor highlighted the hearsay to indicate that the victim was telling the truth. We affirm.

¶ 2. Defendant was charged with sexually assaulting his eleven-year-old stepdaughter, N.C., over a period of several months when the family of six was living in North Bennington. N.C. gave extensive and detailed testimony about the assaults. She reported that they most often took place in the mornings before school, in her older sister's bedroom, when her mother was sleeping and after her older sister had left for school. N.C.'s older sister also testified that when she left for school in the mornings defendant was awake and her mother was asleep in her own bedroom.

¶ 3. The victim's mother, Penny Babson, was a witness for the State. She was married to defendant at the time of trial, was still in contact with him, and had no plans to dissolve the marriage. She and defendant both testified that she was a very light sleeper, was usually awake in the mornings when the kids were getting ready for school, and that if she did go to sleep before they left for school, she would sometimes sleep on the living room couch.

¶ 4. Penny testified that after her daughter told her that defendant had touched her, she confronted defendant, but he denied it. They argued, and she told him to leave. She testified that he said, "Well, I did do it, is that what you want to hear or I did touch them, is that what you want to hear?" She made him leave, secured an abuse prevention order, and wrote a letter to the editor of the local newspaper, saying that she hoped defendant would get the help that he needed. Defendant, who denied the allegations, testified consistent with Penny's

account of their discussion. Penny later denied telling anyone that defendant had confessed to her, but three additional witnesses for the State — two investigators and Penny's sister — testified that Penny had told them that defendant had confessed. In addition, N.C. testified that she overheard her mother telling defendant that he could get help if he confessed, to which defendant replied that he would have to go to jail.

¶ 5. Dr. Nancy Scattergood, a family practitioner who had performed a physical examination of the victim, testified for the State. Dr. Scattergood testified that there was no physical evidence indicating anal sex, but that the absence of any physical signs did not conclusively mean that anal sex had not occurred. At the conclusion of Dr. Scattergood's testimony, the trial court solicited questions from the jurors. One juror wrote, "What did [the victim] state when she was asked why she was there?" The court addressed the question with counsel, heard no objection, and posed the question to the doctor. Dr. Scattergood responded, "I can read it. I have it in quotes. I asked her why she's here. She said, 'I'm here because stepdad molested her, started when . . . .'" Defense counsel then objected "to the rest." At the ensuing bench conference, defense counsel sought an instruction that the doctor isolate the victim's exact statements rather than paraphrase them, but did not otherwise object. Dr. Scattergood was allowed to continue: "[the victim] said it started when they moved. He puts his private in her butt, sometimes inside, it hurts sometimes. There's no bleeding, never puts his private in her mouth. He did ejaculate, and the quotation is, 'Liquid come out of his penis,' and the last time was about two weeks ago."

¶ 6. During closing argument, the prosecutor repeated some of the doctor's testimony about what the victim told her. The jury returned verdicts of guilty on one count of sexual assault pursuant to 13 V.S.A. § 3252(b)(2), and one count of aggravated sexual assault based on repeated nonconsensual acts as part of a common scheme or plan, pursuant to 13 V.S.A. § 3253(a)(9).

¶ 7. On appeal, defendant argues that he did not receive a fair trial because Dr. Scattergood's testimony was admitted in error and highlighted by the prosecutor in closing argument. Because defendant did not preserve his objection at trial, we review only for plain error, and find none. V.R.Cr.P. 52(b).

¶ 8. "Plain error exists only in exceptional circumstances where a failure to recognize error would result in a miscarriage of justice, or where there is glaring error so grave and serious that it strikes at the very heart of the defendant's constitutional rights." *State v. Oscarson*, 2004 VT 4, ¶ 27, 176 Vt. 176, 845 A.2d 337 (internal quotation marks and citation omitted). We will reverse only where we find that the error seriously affected defendant's substantial rights and "had an unfair prejudicial impact on the jury's deliberations." *Id.* ¶ 27. Where admission of prejudicial evidence is claimed as plain error, the appellant must show the judgment was "substantially affected" by the admission. *State v. Bubar*, 146 Vt. 398, 401, 505 A.2d 1197, 1199 (1985). Plain error analysis is fact-based, and "[o]bviousness of the error and prejudice to the defendant are the key factors." *State v. Weeks*, 160 Vt. 393, 400, 628 A.2d 1262, 1266 (1993).

¶ 9. Defendant correctly argues — and the State does not contest — that the doctor's statements were impermissible hearsay. Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. *State v. Carter*, 164 Vt. 545, 549, 674 A.2d 1258, 1262 (1996). Vermont Rule of Evidence 803(4) allows statements "made for purposes of medical diagnosis or treatment and describing medical history, or past or present symp-

604

toms, pain, or sensations." Unlike the federal rule, however, the Vermont rule does not allow admission of "'statements of the inception and cause of a condition or symptoms'" even if the statements are "'pertinent to diagnosis or treatment.'" *State v. Derouchie*, 153 Vt. 29, 32, 568 A.2d 416, 417 (1989) (quoting Reporter's Notes, V.R.E. 803(4)). The admission of such hearsay was error. *State v. Gallagher*, 150 Vt. 341, 349, 554 A.2d 221, 226 (1988).

¶ 10. We do not find plain error in this case, however, because defendant has not shown that the jury was "substantially affected" by the doctor's hearsay testimony. *Bubar*, 146 Vt. at 401, 505 A.2d at 1199. The State's independent evidence of defendant's guilt overwhelms any effect the erroneous testimony may have had on the verdict. The jury could well have believed that defendant admitted to Penny that he touched the victim. The defense's attempt to characterize defendant's statement as anything less than a confession was strongly assailed. Penny's credibility on that point was attacked by three different witnesses. She had motive to lie, and her actions after that conversation — kicking defendant out, getting an abuse prevention order, and writing a letter to the editor — tended to corroborate a belief on her part that the conversation was a confession. N.C. also testified that she overheard part of that discussion between defendant and Penny. Further, the defense theory that defendant lacked access to the victim appeared to carry little weight with the jury because defendant and the victim shared a home. The testimony of N.C. and her older sister also directly countered that theory.

¶ 11. Finally, N.C. was the State's primary witness, testified first at trial, and was subject to cross-examination. See *Derouchie*, 153 Vt. at 31-33, 568 A.2d at 417-18 (holding that admission of examining doctor's limited testimony repeat-

ing victim's statements was harmless error where the victim testified first at trial, was the State's primary witness, and was available for cross-examination, and where doctor denied having personal knowledge as to cause of victim's injuries). N.C.'s account of the abuse was both broader in scope and far more detailed than the doctor's hearsay testimony. Considering the strength of the State's case, the fact that the doctor repeated portions of N.C.'s own, primary testimony could not substantially affect the verdict so as to amount to plain error. The doctor's testimony about N.C.'s earlier statements was merely cumulative to N.C.'s own testimony, which was quite detailed; we have found the admission of such cumulative hearsay harmless under very similar circumstances. See *id.* at 33, 568 A.2d at 418 (holding that hearsay testimony's admission "had no effect on the outcome of the trial and any . . . error was harmless" where the testimony was "merely cumulative"); see also *Gallagher*, 150 Vt. at 349, 554 A.2d at 226 ("[I]n view of the merely cumulative nature of the physician's testimony, and the fact that the child declarant was available for cross-examination, the resulting error was harmless.").

¶ 12. Defendant argues that even if the doctor's testimony alone was not prejudicial enough to amount to plain error, the prosecutor exacerbated the effect of the hearsay by highlighting Dr. Scattergood's testimony during closing argument. In his initial closing argument, the prosecutor mentioned that N.C. told the doctor the same thing she testified to at trial. Defense counsel then referenced the hearsay during his own closing argument, noting that it was discovered "through the doctor" that the last alleged assault occurred two weeks prior to the doctor's appointment. In rebuttal, the prosecutor mentioned three more times that the doctor's testimony regarding what N.C. reported to her was consistent

with N.C.'s own testimony at trial, and he repeated one line of that testimony.

¶ 13. The prosecutor's closing was not sufficiently prejudicial to create plain error. The prosecutor only repeated the improper hearsay testimony; he did not make "manifestly and egregiously improper" comments. *State v. Moran*, 141 Vt. 10, 19-20, 444 A.2d 879, 884 (1982) (finding plain error where prosecutor, during closing argument, "manifestly and egregiously" used prior convictions to suggest motive or propensity, and evidence of defendant's guilt was not so overwhelming as to allow conclusion that judgment was not substantially affected by the error).

¶ 14. It is true that where testimony was initially admitted in error but not repeated or emphasized in closing argument, "[t]he lack of emphasis is a proper consideration in finding no plain error." *State v. Sims*, 158 Vt. 173, 182, 608 A.2d 1149, 1155 (1991). In that case we found no plain error where the expert testifying on the psychology of sexual abuse implicitly indicated that she believed the complainant — and thereby invaded the exclusive province of the jury to determine credibility of witnesses — but that belief was not later emphasized in closing argument. Here, however, in contrast to *Sims*, Dr. Scattergood testified as a treating medical doctor about her physical examination of the victim, not as an expert on the psychological effects of child sexual abuse. See *State v. Wetherbee*, 156 Vt. 425, 431, 435-36, 594 A.2d 390, 393, 395 (1991) (explaining that hearing the testimony of a psychological expert, who could be perceived as a "truth detector," posed greater danger of prejudice to the jury than hearing testimony of a medical doctor focused primarily on physical treatment). Dr. Scattergood did not attest to the victim's credibility, but only repeated the victim's own statements. Any prejudice resulting from the prosecutor's repetition of the

doctor's testimony, therefore, was not as grave as the prejudice in *Wetherbee*.

¶ 15. Given the quality of the victim's testimony and the overall strength of the State's case, we cannot conclude that either Dr. Scattergood's testimony or the prosecutor's closing remarks resulted in such prejudice as to create a miscarriage of justice.

*Affirmed.*