917 A.2d 528 (2007)
2007 VT 18
STATE of Vermont
v.
Timothy BURGESS.
No. 05-199.
Supreme Court of Vermont.
February 23, 2007.
*530 Diane C. Wheeler, Franklin County Deputy State's Attorney, St. Albans, for Plaintiff-Appellee.
Timothy R. Burgess, Pro Se, Swanton, Defendant-Appellant.
*531 Present: REIBER, C.J., DOOLEY, JOHNSON, SKOGLUND and BURGESS, JJ.
¶ 1. BURGESS, J.
Defendant Timothy Burgess appeals pro se from his conviction of sexual assault and lewd and lascivious conduct against his minor stepdaughter, J.H. He argues that the trial court committed reversible error by: (1) admitting hearsay evidence; (2) admitting evidence of his prior sexual conduct; (3) allowing the prosecutor to ask questions that were contrary to pretrial rulings and based on facts not in evidence; (4) allowing the Franklin County State's Attorney to testify; and (5) denying his motion for judgment of acquittal and a new trial. We affirm.
¶ 2. Defendant was charged with sexual assault and lewd and lascivious conduct in January 2004. The information alleged that defendant placed his penis in J.H.'s hand between December 1997 and December 1998, when J.H. was ten years old, and that defendant inserted his fingers into J.H.'s vulva between February 2003 and December 2003, when J.H. was sixteen.
¶ 3. The following evidence was presented at trial. J.H. lived with her brother, her mother, Lisa Burgess, and defendant. In April 1998, Mrs. Burgess moved in with another man, leaving J.H. and her stepbrother with defendant. During the month that Mrs. Burgess was gone, J.H. woke up several times to find defendant's penis in her hand. She testified that defendant used her hand to masturbate. In September 2000, J.H. told several friends about defendant's behavior. Shortly thereafter, she was interviewed by police and officials from the Department for Children and Families (DCF). At that time, J.H. denied that anything improper occurred.
¶ 4. J.H. testified at trial that defendant began touching her again in the fall of 2003, around the same time that her mother again became involved with a different man. She stated that she woke up numerous times to find defendant's fingers in her vagina. In late December 2003, J.H. told her friend Amber Felisko that she was planning to run away. According to J.H., Amber understood that she was leaving because she could no longer take defendant's behavior. J.H. ran away with her boyfriend shortly thereafter, testifying that she left to get away from defendant. J.H. was discovered in Pennsylvania the following day, and her biological father, her father's girlfriend Missy Munro, and defendant, went to pick her up. J.H. testified that on the ride back to Vermont she told Ms. Munro that defendant had been touching her inappropriately. After learning of J.H.'s disclosures, J.H.'s mother eventually told defendant to move out, and the police were contacted.
¶ 5. Mrs. Burgess also testified at trial. She stated that she confronted defendant about the abuse shortly after J.H.'s return from Pennsylvania. She told defendant not to deny abusing J.H. because it was "the same stuff" that he had done to her while she was sleeping, and "it's familiar." Mrs. Burgess testified that defendant told her that "it all started" when she left him for another man in April 1998, and that he told her "it was just my fingers." According to Mrs. Burgess, defendant admitted to her that he might be attracted to J.H., that it was "definitely a girl thing," and that he had not abused their son. Mrs. Burgess stated that, after ordering defendant to move out, she found a note from him that stated "Lisa, I'm sorry, I love you, I'm seeking help." Defendant verbally reiterated to Mrs. Burgess that he needed to get some help, and told her that he hoped she would stand by him.
¶ 6. At trial, defendant denied abusing J.H., and testified that after retrieving *532 J.H. from Pennsylvania he made some "harsh statements" to her about her boyfriend. He stated that on the car ride home J.H. looked over at him and whispered that she would "get [him]." Defendant admitted leaving the note described above, but asserted that what he had been "sorry" about was that Mrs. Burgess believed that the abuse could have happened, and that he was "seeking help" in dealing with her extramarital affairs. He denied confessing to his wife. The jury found defendant guilty of both counts, and this appeal followed.
¶ 7. Defendant first argues that the court committed reversible error by allowing numerous witnesses to testify to J.H.'s hearsay statements.[1] He maintains that evidence of the victim's prior consistent statements should have been excluded because, as of October 2002, J.H. had a motive to lie to explain her trip to Pennsylvania with her boyfriend. Defendant asserts that because this case presented a credibility contest the improperly admitted evidence cannot be considered harmless beyond a reasonable doubt.
¶ 8. Defendant failed to object to any of this evidence at trial, and we find no plain error. See State v. Pelican, 160 Vt. 536, 538, 632 A.2d 24, 26 (1993) ("Plain error exists only in exceptional circumstances where a failure to recognize error would result in a miscarriage of justice, or where there is glaring error so grave and serious that it strikes at the very heart of the defendant's constitutional rights." (citation omitted)). We begin with defendant's challenge to Ms. Munro's testimony. The record shows that the State questioned Ms. Munro about her trip to Pennsylvania, cautioning her to respond "yes" or "no" to its questions. The prosecutor asked Ms. Munro if at some point J.H. said that "there had been inappropriate conduct." Defendant objected, and the parties discussed the issue at the bench. The State indicated its belief that the court had ruled that it could lead Ms. Munro with that specific question to avoid the introduction of any hearsay evidence. The State explained that based on its earlier offer the next question would be "did you call the authorities," and "why not?" The court noted that the parties agreed in their opening statements that J.H. told Ms. Munro about the abuse and that Ms. Munro had not contacted police. Defense counsel stated, "that's fine," and the court allowed the State to ask its leading question. Ms. Munro then testified that J.H. told her that defendant had engaged in some inappropriate sexual conduct, and that she had not contacted the police because they were in Pennsylvania and she did not think that there was anything Pennsylvania police could do.
¶ 9. The court did not commit plain error in allowing this testimony. Ms. *533 Munro provided no details about J.H.'s conversation with her. Rather, with defendant's acquiescence, the State sought to establish why Ms. Munro had not contacted the police. Thus, J.H.'s out-of-court statement was not offered for its truth, but rather to explain Ms. Munro's behavior. Cf. V.R.E. 801(c) (defining hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted"). Even assuming that the statement was inadmissible hearsay, any error would be harmless. J.H. testified to this same conversation with Ms. Munro, and she was cross-examined by defendant. Ms. Munro's statement about J.H.'s disclosure was merely cumulative to this testimony. See State v. Gallagher, 150 Vt. 341, 349, 554 A.2d 221, 226 (1988) (admission of hearsay evidence harmless error in light of merely cumulative nature of testimony, and the fact that the hearsay declarant was available for cross-examination); see also State v. Derouchie, 153 Vt. 29, 32-33, 568 A.2d 416, 417-18 (1989) (reaching similar conclusion).
¶ 10. We next consider the testimony offered by Amber Felisko. Amber testified that J.H. told her that she was running away on the morning that she left Vermont. The prosecutor asked Amber if at some point before that morning J.H. told her that defendant had engaged in inappropriate sexual contact, directing Amber to answer "yes" or "no." Amber responded affirmatively, but went on to say that J.H. never "completely said anything" to her about the abuse but rather said something along the lines of "things happening." Amber later told her mother what J.H. told her.[2]
¶ 11. Defendant did not object to any of this testimony, and in fact elicited additional hearsay statements from Amber. Assuming that J.H.'s hearsay statement about "things happening" was made after J.H. had a motive to lie and, therefore, was not a prior consistent statement allowable under V.R.E. 801(d)(1)(B), the admission of this testimony nonetheless does not constitute plain error. Cf. State v. Lemay, 2006 VT 76, ¶ 6, 180 Vt. ___, 908 A.2d 430 (explaining that to constitute nonhearsay under V.R.E. 801(d)(1) a prior consistent statement must have been made before a motive to falsify arose because "a consistent statement that predates the motive is a square rebuttal of the charge that the testimony was contrived as a consequence of that motive" (citation omitted)). The record shows that J.H. testified and was cross-examined about her disclosures to Amber. As with Ms. Munro's testimony, Amber's testimony about J.H.'s statement was cumulative, and any error in its admission was harmless. See Gallagher, 150 Vt. at 349, 554 A.2d at 226; see also State v. Carter, 164 Vt. 545, 557, 674 A.2d 1258, 1267 (1996) (concluding that admission of victim's prior consistent statements through her sister was harmless error where State had elicited same information from victim without objection, defense counsel cross-examined victim, and sister's testimony simply confirmed information that defense counsel had already elicited from victim).
*534 ¶ 12. Finally, we find no plain error in the court's admission of any hearsay statements from J.H. through Mrs. Burgess's testimony. With respect to out-of-court statements allegedly made by J.H., Mrs. Burgess testified only that shortly after the parties returned from Pennsylvania "[w]e just started talking about what happened when [J.H.] ran away and [J.H.] talked about her time at the end and then [defendant] was acting really fidgety and nervous." Defendant also cites to Mrs. Burgess's testimony that she received a telephone call from a DCF official in September 2000, who informed her that J.H. denied being abused, that DCF had "no reason not to believe her," and that it had closed the case. Finally, as relevant to this claim of error, defendant points to Mrs. Burgess's statement, offered in response to a question from defense counsel, that Ms. Felisko called her and told her that Amber had said that J.H. had been molested by defendant and that "and if [J.H.] ran away it was nothing against [Mrs. Burgess], it was that she needed to get away and that was why."
¶ 13. We fail to see how defendant was unduly prejudiced by the admission of any of this evidence. Mrs. Burgess did not testify to anything specific that J.H. said after returning from Pennsylvania. Her statement about the phone call from DCF was, if anything, to defendant's benefit. Moreover, there was no dispute about what DCF did or the conclusion that it reached in September 2000; numerous witnesses testified about these events. Finally, Mrs. Burgess's description of the phone call that she received from Ms. Felisko was not only elicited by defense counsel, but it was cumulative to trial testimony offered by Ms. Felisko, Amber, and J.H., all of whom were subject to cross-examination. We find no plain error.[3]
¶ 14. We turn next to defendant's argument that the court erred in allowing Mrs. Burgess to testify to his hearsay statements. As noted above, Mrs. Burgess testified that defendant told her "it all started" when she left him for another man; that "maybe somewhere deep down" he was attracted to J.H.; that he had not had sex with J.H. but just used his fingers; that it was "definitely a girl thing," and he had not abused his son; and that defendant told her he was sorry and that he was getting help. These statements were plainly admissible as nonhearsay under V.R.E. 801(d)(2)(A) because they are statements by a party-opponent. See State v. Bernier, 157 Vt. 265, 268, 597 A.2d 789, 791 (1991) (explaining that admissions include any statement made and offered against a party-opponent, and the statements need not be against the declarant's interest when made); see also United States v. Leal, 781 F.2d 1108, 1111 (5th Cir.1986) (explaining that "a party's words, offered against him, form an exclusion to the definition of hearsay").
¶ 15. Defendant's reliance on State v. Verrinder, 161 Vt. 250, 637 A.2d 1382 *535 (1993), is misplaced. In that case, the defendant sought to introduce his own statement of remorse, which he made to a witness shortly after killing someone. Id. at 256, 637 A.2d at 1387. Defense counsel argued that the statement was admissible, not as nonhearsay, but as a present sense impression, an excited utterance, or a statement of then-existing mental condition, all exceptions to the hearsay rule. Id. The trial court rejected this argument and excluded the testimony. Id. We affirmed. We did not hold, as defendant argues, that a defendant's hearsay statements are always inadmissible at trial unless they fall within the three hearsay exceptions discussed in Verrinder.
¶ 16. Defendant next argues that the court committed reversible error by admitting evidence of his past sexual acts with Mrs. Burgess. He points to his wife's statement that J.H.'s description of the abuse was "familiar" to her, and that defendant had done the same things to her while she was sleeping. Defendant asserts that this error was compounded by the prosecutor raising it during her closing argument.
¶ 17. Again, defendant did not object to this testimony below, nor did he did argue that the evidence should be excluded under V.R.E. 404(b) or V.R.E. 403.[4] In fact, defendant elicited this same evidence from Mrs. Burgess on cross-examination. We find no plain error. First, this evidence does not appear to have been offered as substantive evidence of defendant's past conduct. Mrs. Burgess did not describe any specific sexual acts that defendant had performed, nor did the State inquire on this subject. Rather, this testimony was offered in connection with Mrs. Burgess's description of her confrontation with defendant and defendant's subsequent confession. Cf. State v. Bruyette, 158 Vt. 21, 27, 604 A.2d 1270, 1272 (1992) (explaining that V.R.E. 404(b) "operates to exclude evidence of prior acts that are similar to the charged crime, if the evidence is introduced for the purpose of showing a general propensity to commit the acts in question"); see also State v. Lawton, 164 Vt. 179, 182, 667 A.2d 50, 54 (1995) (evidence of prior bad acts may not be admitted "to prove the character of a person in order to show that he acted in conformity therewith," because when used solely for this purpose, there is a danger that jury will convict defendant of charged crime solely because he has committed other crimes or acts) (citing V.R.E. 404(b)). Even if wife's statements fell within Rule 404(b), the admission of this testimony would not constitute plain error, particularly given the strength of the State's case, including defendant's confessions, and the fact that defendant elicited this same testimony from Mrs. Burgess. See State v. Babson, 2006 VT 96, ¶ 8, 180 Vt. ___, 908 A.2d 500 (mem.) ("Where admission of prejudicial evidence is claimed as plain error, the appellant must show the judgment was `substantially affected' by the admission.") (citing State v. Bubar, 146 Vt. 398, 401, 505 A.2d 1197, 1199 (1985)). As we found in Babson, "[t]he State's independent evidence of defendant's guilt overwhelms any effect the erroneous testimony may have had on the verdict." Id. ¶ 10.
¶ 18. Given the discussion above, we reject defendant's assertion that the prosecutor erred by repeatedly asking questions that suggested facts not properly in evidence, as well as his claim that he was denied due process as a result of a pattern *536 of prosecutorial misconduct. The record does not support these assertions.
¶ 19. Defendant next argues that the trial court committed reversible error in allowing the Franklin County State's Attorney to testify at trial. The record indicates the following. During his direct examination, defendant testified to his recollection of the DCF investigation in September 2000. He stated that he received a letter from DCF, which indicated that it was not going to take any action on the allegation of sexual abuse. Defendant testified that he was surprised to receive the letter. He then stated, "knowing the [Franklin County] State's Attorney fairly well I called him and simply asked him what this was all about." He testified that based on his conversation with the state's attorney he learned that "the complaining person had made these allegations before and not to worry about it."
¶ 20. The State then called the state's attorney, James Hughes, as a rebuttal witness. Mr. Hughes explained that he and defendant had been neighbors, and that J.H. and his daughter had been friends. He testified that he did not recall ever discussing an allegation of sexual abuse or a letter from DCF with defendant. He stated that he never told defendant that Holly Creeks, the woman who contacted DCF, had made allegations of inappropriate sexual conduct about others. The prosecutor then asked Mr. Hughes if he had "any concerns" about J.H. around this time. Mr. Hughes responded affirmatively, and defendant objected, arguing that Mr. Hughes was going beyond the scope of rebuttal. The court sustained the objection, and the prosecutor discontinued this line of questioning. Defendant did not ask that Mr. Hughes' answer be stricken, or that the court give the jury a cautionary instruction.
¶ 21. Defendant now argues that his conviction should be reversed because Mr. Hughes "placed his personal imprimatur on the veracity of the State's case," and his testimony went beyond mere rebuttal on the collateral issue raised by defendant on direct examination. We reject this argument. First, Mr. Hughes had no direct involvement in prosecuting the case against defendant, and the cases cited by defendant are largely inapposite. Cf. State v. Griffith, 94 Idaho 76, 481 P.2d 34, 41 (1971) (finding no reversible error where deputy prosecuting attorney called prosecuting attorney to testify to statements made by witness during investigative interview, but cautioning that the prosecuting attorney should not be called to testify against defendant unless such testimony is "absolutely essential"); State v. Alfano, 305 N.J.Super. 178, 701 A.2d 1296, 1300 (App.Div.1997) (recognizing that trial court has discretion in determining whether a defendant can call the prosecuting attorney as a witness). Indeed, the record suggests that defendant was trying to use Mr. Hughes' position to bolster his testimony that the victim's allegation in 2000 was unfounded. The State was entitled to call Mr. Hughes to rebut this testimony, and Mr. Hughes' ambiguous statement that he had "concerns" about J.H. does not rise to the level of plain error.
¶ 22. Finally, we reject defendant's assertion that the trial court erred in denying his motion for a new trial and judgment of acquittal without holding a hearing on the motion or issuing written findings. Defendant maintains that, absent written findings, this Court cannot discern if the trial court abused or withheld its discretion. We disagree. The record shows that in his consolidated motion for new trial and judgment of acquittal defendant raised all of the same arguments that he now raises on appeal, with the exception of his assertion that the jury's verdict was *537 against the weight of the credible evidence. As discussed above, we find all of these arguments without merit. Thus, the trial court could not have abused its discretion in denying defendant's motion for a new trial. See State v. Desautels, 2006 VT 84, ¶ 10, 180 Vt. ___, 908 A.2d 463 (trial court has discretion in deciding if a new trial is warranted under V.R.Cr.P. 33 "in the interests of justice"). We similarly find no error in the denial of defendant's motion for judgment of acquittal because the credible evidence in the record amply supports the jury's verdict. See State v. Squiers, 2006 VT 26, ¶ 2, 179 Vt. ___, 896 A.2d 80 (on review of denial of V.R.Cr.P. 29 motion for judgment of acquittal, Supreme Court views evidence in the light most favorable to the prosecution, excluding any modifying evidence, to determine if State's evidence sufficiently and fairly supports a finding of guilt beyond a reasonable doubt).
Affirmed.
NOTES
[1] The record citations provided by defendant do not support his assertion that the trial court made a pretrial ruling that all of the victim's hearsay statements would be excluded unless a showing was made that the statements occurred before a motive to fabricate arose. The subject of the pretrial ruling appears to concern the testimony of Ms. Munro and police officer Kevin Bushey. The State sought to introduce a transcript of Ms. Munro's interview with Officer Bushey, which contained Ms. Munro's recollection of specific statements that J.H. made on the way back to Vermont. The State argued that the statements were admissible under V.R.E. 803(3) as reflecting the victim's then-existing mental condition. The court's ruling does not appear in the transcript provided by defendant. In any event, the transcript of Ms. Munro's interview was not offered at trial, nor did Ms. Munro testify to the substance of her conversation with J.H. As to Officer Bushey, defense counsel argued, and the State agreed, that the officer would not discuss what J.H. told him during her initial interview unless the door was opened to this testimony. Officer Bushey did not testify to the substance of his interview with J.H. at trial.
[2] Amber's mother, Cindy Felisko, testified that Amber received a telephone call the morning that J.H. ran away, and that defendant called later that afternoon looking for J.H. Amber eventually told Ms. Felisko what J.H. said, and Ms. Felisko called Mrs. Burgess and told her what she knew. Ms. Felisko did not testify to any specific out-of-court statements made by J.H., nor did Ms. Felisko provide any detail about what Amber told her. Rather, she stated that Amber "told me what she had heard from [J.H.] and why [J.H.] had run away, and why she didn't want to talk to [defendant] and what not." We find no plain error in the admission of this testimony.
[3] Officer Kevin Bushey did not testify to any of the victim's hearsay statements, and thus we do not address the admissibility of his testimony. Additionally, the testimony offered by Erica Robertson, Holly Creeks, and St. Albans Police Chief Marcel Renaudette concerned J.H.'s disclosure of abuse in September 2000. As defendant essentially concedes in his brief, these statements were made well before J.H. had an alleged motive to lie to cover up her trip to Pennsylvania. Thus, the victim's prior consistent statements were admissible as nonhearsay under V.R.E. 801(d)(1). Finally, we note that while defendant complains, generally, that the trial court erred by allowing certain witnesses to explain why the victim may have made prior consistent statements, we find no such explanations in the testimony cited by defendant (other than those discussed) that fall within the definition of hearsay. See V.R.E. 801 (defining hearsay).
[4] Contrary to defendant's suggestion, defense counsel did not object to this evidence on V.R.E. 404(b) grounds. The discussion to which defendant refers in his brief involved a question from the jury, which the trial court declined to answer.