In re Barry Babson, No. 471-12-07 Bncv (Wesley, J., Feb. 23, 2011)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT
SUPERIOR COURT

| | |
|---|---|
| IN RE BARRY BABSON | BENNINGTON UNIT, CIVIL DIVISION<br>Docket No.471-12-07 Bncv |

## OPINION & ORDER

Trial on the issues raised by the petition for post-conviction relief was held on October 26 and October 28, 2010. Petitioner was present, represented by Mark Furlan, Esq. The State was represented by Deputy Bennington State's Attorney Christina Rainville. After requests to extend the deadline for filing proposed findings of fact and conclusions of law were granted, the trial record was closed on January 20, 2011.[1]

**Procedural History**

After a jury trial in November 2004, Petitioner was convicted of aggravated sexual assault and sexual assault based on two separate informations filed in Doc. No. 399 & 399-3-02 BnCr. At the conclusion of the sentencing hearing, Judge David Suntag sentenced Petitioner to concurrent terms of 34-35 years to serve and 40-100 years to serve. The convictions were affirmed by the Vermont Supreme Court, *State v. Babson*, 2006 VT 96, 180 Vt. 602.

Petitioner filed the current claim for post-conviction relief on December 6, 2007, making numerous claims of constitutional error and seeking the appointment of counsel. Pursuant to the terms of a scheduling order, Attorney Furlan amended the petition on September 22, 2009. The amended petition is limited to the claim that Petitioner was denied his Sixth Amendment right to a fair trial on account of ineffective assistance of counsel. In particular, Petitioner complains that his trial counsel "failed to (1) object to the admissibility of the testimony offered by Dr. Scattergood reiterating the

---

[1] Petitioner was granted until January 10, 2011 to submit his post-hearing memorandum, and the State's deadline was extended until January 20. On January 20, the State had filed its brief, although the Court had yet to receive Petitioner's submission. This opinion was drafted and about to be issued on January 31, at which point Petitioner's memorandum was filed in the Clerk's office. Although the cover letter and certificate of service suggest that the memorandum was placed in the mail on or about January 11, 2011, it is likely that the delay in filing is due to counsel's continued use of a post office box as the Court's mailing address. Months ago, accompanied by notice to the bar, that address was abandoned as a cost-saving measure in favor of direct delivery to the courthouse. Thus, filing delays associated with continued use of the old address are difficult to countenance as excusable neglect. Nevertheless, although consideration of Petitioner's memorandum does not alter the principal thrust of the Court's analysis, the attached addendum addresses a few particular arguments not directly treated in the main opinion.

complainant's statements to her detailing the crime and (2) to object to the testimony of Penny Babson under V.R.E. 801(d)(1)(A)."

**Discussion**

Consideration of the merits of Petitioner's claims properly begins with a summary of the Supreme Court's opinion on appeal, which is substantially dispositive of the issues framed for post-conviction relief as well.

Petitioner was charged with sexually assaulting his eleven-year old stepdaughter, N.C., over a period of several months. N.C. gave extensive and detailed testimony concerning the assaults, which took place most often in her older sister's bedroom before school, when her mother was sleeping and after her sister had left for school. N.C.'s older sister testified that when she left for school Petitioner was often awake, but her mother was asleep. N.C.'s mother, Penny Babson, was called as a witness by the State. She testified that after her daughter told her that Petitioner had touched her, she confronted him and he denied it. Recalling the following argument when she told him to leave, Ms. Babson testified that Petitioner said, "Well, I did do it, is that what you want to hear or I did touch them, is that what you want to hear?" Ms. Babson denied telling anyone that Petitioner confessed to her, but two investigators and her sister later testified that she had told them of Petitioner's confession. Petitioner elected to testify and denied having assaulted N.C., but he testified consistently with Ms. Babson's account of his argument with her, acknowledging the statement she attributed to him that he "did do it". *Babson*, 2006 VT 96, ¶¶ 2-4.

The State called Dr. Nancy Scattergood, a family physician who had examined N.C. Dr. Scattergood found no physical evidence indicating anal sex, but she testified that the absence of physical signs was not conclusive evidence that anal sex had not occurred. Judge Suntag permitted juror questions, and one juror wrote "What did [N.C.] state when she was asked why she was there?" According to the Supreme Court's review of the record, no one objected to this inquiry. When it was posed by the trial judge, Dr. Scattergood began, "I can read it. I have it in quotes. I asked her why she's here. She said, 'I'm here because my stepdad molested her, started when." At that point, Petitioner's attorney, Frederick Bragdon, Esq., objected. By the Supreme Court's characterization, the grounds as set forth during the ensuing bench conference were limited to "an instruction that the doctor isolate the victim's exact statements rather than paraphrase them". Dr. Scattergood was then allowed to continue: "[N.C.] said it started when they moved. He puts his private in her butt, sometimes inside, it hurts sometimes. There's no bleeding, never puts his private in her mouth. He did ejaculate, and the quotation is, 'Liquid come out of his penis', and the last time was about two weeks ago." The prosecutor repeated some of Dr. Scattergood's testimony about what N.C. had told her during closing argument. *Id.* ¶¶ 5-6.

Petitioner claimed on appeal that Dr. Scattergood's testimony was admitted in error and highlighted by the prosecutor in closing argument. Concluding that defense counsel had not preserved an objection to the doctor's testimony, the Supreme Court

applied the standard for plain error, and found none. Plain error is "so grave and serious that it strikes at the very heart of defendant's constitutional rights" resulting in a miscarriage of justice, and it must have "an unfair prejudicial impact on the jury's deliberations." *Id.* ¶ 8 (citing *State v Oscarson*, 2004 VT 4, ¶ 27, 176 Vt. 176). The "obviousness of the error and prejudice to the defendant are key factors." *Id.* (citing *State v. Weeks*, 160 Vt. 393, 400 (1993)). Here, the Supreme Court acknowledged, and the State did not contest, that Dr. Scattergood's testimony as to N.C.'s statement was impermissible hearsay. Although made in connection with the doctor's examination, the statement was not covered by V.R.E.803(4), the hearsay exception for declarations made for the purpose of medical diagnosis or treatment. Unlike the federal rule, Vermont's rule excludes from the exception "statements of the inception or cause of a condition or symptoms". *Id.* ¶ 9 (citing *State v. Derouchie,* 153 Vt. 29 (1989); *State v. Gallagher*, 150 Vt. 341, 349 (1988)).

Notwithstanding the erroneous admission of N.C.'s statement to Dr. Scattergood, however, the Supreme Court found no plain error, because there was no showing that the jury had been "substantially affected". The Court concluded "[t]he State's independent evidence of defendant's guilt overwhelms any effect the erroneous testimony may have had on the verdict." *Id.* ¶ 10. Important to this conclusion, the Court held that the jury "could well have believed that defendant admitted to Penny that he touched the victim". Although defense counsel attempted to characterize Petitioner's statement to Ms. Babson as something other than a confession, the jury was free to reject that attempt, particularly in light of the attack on Ms. Babson's credibility by three other witnesses. *Id.* Finally, the Court found the likely impact of the hearsay diminished in consideration of N.C.'s primary testimony, since her "account of the abuse was both broader in scope and far more detailed than the doctor's hearsay testimony." Under all the circumstances, the hearsay was "merely cumulative to N.C.'s own testimony", and of the type whose admission was deemed harmless error "under very similar circumstances". *Id.* (citing *Deroshie*, 153 Vt. at 31-33, and *Gallagher*, 150 Vt. at 349).

At the trial on the post-conviction relief petition, Petitioner's case rested exclusively on expert testimony by Charles Martin, Esq. in support of the claim of ineffective assistance of counsel. The State's only witness was Frederick Bragdon, Esq., Petitioner's trial counsel, called here to explain the tactical basis for pertinent decisions with respect to evidentiary matters as they arose during the original trial testimony. Atty. Martin urges the conclusion that Atty. Bragdon's representation fell below the acceptable level of skill and competence when he failed to preserve an objection to Dr. Scattergood's testimony, which put N.C.'s incriminating out-of-court declaration before the jury. Atty. Martin further believes that this error was harmfully compounded by Atty. Bragdon's failure to make timely objections to other witnesses, who were called by the State to supply additional emphasis to the testimony by Ms. Babson, which arguably had implicated Petitioner in making a confession.[2]

---

[2] The State strenuously objects to any consideration of this claim of error, asserting that it has been waived by failing to frame it properly by the amended petition, and by its omission from the initial disclosure of Atty. Martin's expert opinions. Indeed, much of Atty. Martin's wide-ranging opinions during his two appearances on the stand expanded well outside the issues narrowly identified by the amended petition,

Despite his belief that he had preserved a proper objection to Dr. Scattergood's testimony, Atty. Bragdon acknowledges that it was not as clearly stated as it might have been. However, he defends his tactics regarding Petitioner's so-called confession, believing they were correctly aligned with the Rules of Evidence, and consistent with the only reasonable theory for addressing a problematic piece of evidence. As discussed below, based on the Supreme Court's analysis and Atty. Martin's opinion, this Court holds that Atty. Bragdon's failure to make an effective objection to N.C.'s statement, as offered through Dr. Scattergood, deviated from the standard of practice expected of reasonably skilled defense attorneys. However, the Court rejects Petitioner's claims of other instances of ineffective representation. Finally, for the same reasons the Supreme Court articulated in finding no plain error, this Court concludes that Atty. Bragdon's failure to make an effective hearsay objection did not have a substantial impact on the outcome of the trial, see *Strickland v. Washington,* 466 U.S. 668 (1983), and thus the petition must be **DENIED.**

*Dr. Scattergood's Testimony*

As suggested by Atty. Martin's testimony, the conclusion that Atty. Bragdon breached the standard of adequate representation by failing to properly object to Dr. Scattergood's response to the juror inquiry follows directly from the Supreme Court's analysis, and is further supported by a closer review of the trial transcript than is reflected by the opinion on appeal.

On its direct examination, the State had made no attempt to elicit from Dr. Scattergood either her notes or her recollection of what N.C. had told her concerning any understanding of the reason for the medical examination. Upon the conclusion of the examination by the advocates, Judge Suntag asked if jurors had questions for the witness. After counsel approached the bench, presumably to hear the question sought to be posed, the record is initially inaudible. Tr. 228 (11/12/04). However, just later in the colloquy, Judge Suntag repeats the substance of the juror's question, "What did [N.C.] say when she was asked why she was there?", and asks if there are any objections. Tr. 229-30. The record then reflects the following:

> Mr. Bragdon: I wish I could figure out (inaudible).
> The Court: You're okay?
> Mr. Fenster: I'm fine. Thank you.

Tr. 230. Having heard no objection from Atty. Bragdon, the Court posed the question to Dr. Scattergood. Upon offering to read from her notes, stating "I have it in quotes", the witness begins "I'm here because her stepdad molested her, started when…" Mr.

---

went beyond those disclosed in response to the State's interrogatories regarding expert testimony, and were occasionally at odds with opinions he had offered earlier. Nevertheless, in light of the Court's conclusion that there was no departure from the standard of professional competence, it declines to address the waiver argument.

Bragdon then objects, and counsel engages in a further colloquy with Judge Suntag at the bench.

> Mr. Bragdon: (Inaudible) the first line is quoted, so that's the actual
> words.  I would hazard a guess that the rest is not quoted.
> The Court: Could I see?
> Mr. Bragdon: …so that becomes more of a ...
> The Court: Where am I looking?
> Mr. Bragdon: …I think more of a summary by the doctor.

Tr. 231. Then follows the Court's review with counsel of the substance of the notes Judge Suntag had asked to see, which include details of the sexual assault.

> Mr. Bragdon: I do see the first..what I'm..what I'm objecting to is the first
> (inaudible) clearly are words.  I would assume meaning [N.C.]'s words
> because they're quoted in—the doctor's report.  The rest, except for one
> thing down near the bottom after ejaculation is not in quotation, so I think
> the doctor needs to differentiate what are Noreen's words and what are her
> summaries or whether this refreshes her memory to the actual words that
> were spoken to her.

Tr. 232. When Judge Suntag states "how about we just let her answer the question as she was and then you both follow up and make it clear one way or the other", Atty. Bragdon makes no other objection, simply affirming, "Well, we have follow up".  Dr. Scattergood is then permitted to complete her testimony, aided by her notes, which includes "he puts his private in her butt" and "he did ejaculate, and the quotation is, 'Liquid came out of his penis,' and the last time was two weeks ago." Tr. 233.

Although elicited by a question from a juror, the request of Dr. Scattergood to state, "What did [N.C.] say when she was asked why she was there?" was plainly a solicitation of hearsay.  Atty. Bragdon's proper response to Judge Suntag's query as to objections should have been, "It is impermissible hearsay, not covered by any exception". Particularly once he had the opportunity to examine Dr. Scattergood's notes as to what she was likely to say, the harmful nature of any repetition of N.C.'s out-of-court declaration ought to have been obvious, as the jury was bound to consider it for the truth of what had been asserted.  As the Supreme Court concluded, the objection as Atty. Bragdon attempted to frame it – that Dr. Scattergood should only be allowed to testify to the extent that her notes reflected exact quotes of N.C.'s statement – did not supply adequate notice to the trial judge of the conclusive objection provided by V.R.E. 802. Under all the circumstances, the Court concurs with Atty. Martin's opinion that the standard of competent criminal defense representation was breached by Atty. Bragdon's failure to make the hearsay objection at this juncture of Petitioner's trial.

5

*Testimony by Nora Siemen, Garry Briggs & David Rolland*

Atty. Martin's additional claims of sub-standard trial practice are far less persuasive, as relates to the witnesses called by the State to impeach Ms. Babson's credibility.

As Atty. Martin emphasizes, and as noted in the Supreme Court opinion, the State called Penny Babson, Petitioner's wife and N.C.'s mother, who initially denied that Petitioner had ever confessed to molesting N.C. in any conversation for which she had been present. However, in describing an argument after she confronted him with N.C.'s accusation, which culminated in her demand that Petitioner leave, Ms. Babson testified that Petitioner told her, "Well, I did do it, is that what you want to hear or I did touch them, is that what you want to hear?" Thereafter, the State called three witnesses – Nora Siemen, Investigator Garry Briggs, and Officer David Rolland - whose respective testimonies variously suggested that Ms. Babson admitted that Petitioner had confessed to her. As to each of these witnesses, Atty. Martin contends that Atty. Bragdon failed to make proper objections, to the ultimate prejudice of his client.

The basis for Atty. Martin's claims of sub-standard representation as to inquiries regarding Petitioner's ostensible confession to Ms. Babson became something of a moving target during his testimony. As the Court attempted to understand his principal claim of error, it involved the application of V.R.E.613(b), which precludes extrinsic evidence of the prior inconsistent statement of a witness "unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon, or the interest of justice otherwise require". Relying on this rule, Atty. Martin initially asserted that Atty. Bragdon should have objected to the testimony of each of the State's impeachment witnesses – Siemen, Briggs and Rolland – because Ms. Babson had not been asked about her statements to them during her testimony. However, as Atty. Martin was compelled to acknowledge during cross-examination when confronted by the trial transcript, Atty. Bragdon *did* object on that basis to the State's line of questioning with Investigator Briggs, and was met by Judge Suntag's ruling: "prior inconsistent statement". Cross-examination also produced Atty. Martin's further acknowledgment from the transcript evidence that the State *had* opened the subject of Ms. Babson's conversation with Officer Roland prior to calling the latter as an impeachment witness. Thus, Atty. Martin admitted that there would have been no basis for an objection under Rule 613(b).

Atty. Martin's reliance on Rule 613(b) suffers from other infirmities in addition to the scant support in the record for any objection whatever.[3] An additional potent explanation for trial counsel's failure to make any objection is that the testimony of all the so-called impeachment witnesses was consistent with the theory of the defense. As

---

[3] As the State also elicited from Atty. Martin, consistently with concerns noted by Atty. Bragdon in his testimony, the State might have sought to cure any objection made in reliance on Rule 613(b) by asking leave to recall Ms. Babson; a concession which further highlights how the issue of making objections, always fraught with tactical considerations, could hardly be deemed a non-discretionary judgment in this particular instance.

Atty. Bragdon testified, the subject of his client's statements in the seeming nature of a confession presented a profound tactical dilemma. Petitioner was not going to deny having made the statements when he took the stand, since his testimony was not different from Ms. Babson's regarding their argument. Rather, as Ms. Babson also attempted to explain, Petitioner's strategy for addressing the statement, "Well, I did do it, is that what you want to hear or I did touch them, is that what you want to hear?" was to characterize it as sarcasm brought on by the heat of the moment, as distinct from an admission of culpability. Indeed, it is difficult to imagine any other approach, since Ms. Babson had never denied having heard the statement, and had related it to several others. Still, the statement is fairly susceptible of multiple interpretations, and Ms. Babson's denial of having told anyone that Petitioner "confessed" could predictably and fairly be characterized as inconsistent. Given these strictures, objections to the testimony of those who heard Ms. Babson relate Petitioner's statement that "he did do it" would have been doubly perilous, tactically; the objections likely would have been overruled (as indeed one was), and they might have further caused the jury to question Petitioner's credibility if he admitted making the statement, while challenging the State's witnesses who claimed that Ms. Babson told them about it.

In assessing claims of ineffective assistance of counsel, there is a strong presumption that counsel's performance was both competent and professionally adequate. *In re Grega*, 2003 VT 77, ¶ 7, 175 Vt. 631; *In re Cohen*, 161 Vt. 432, 434–35 (1994). An attorney has "wide latitude" to make reasonable tactical decisions with respect to trial strategy. *In Re Kasper*, 142 Vt. 31, 37 (1982). The assessment of counsel's performance is undertaken in consideration of the entire record and the situation at the time of trial, without the benefit of hindsight. *In re Hatten*, 156 Vt. 374, 378 (1991). Importantly, the "trial of [a] case ... [is] susceptible to more than one strategy. The proper question is whether trial counsel had any reasonable strategy and whether they pursued it with adequate preparation and diligence." *In re Dunbar*, 162 Vt. 209, 213 (1994). In consideration of these governing precepts, the Court is simply unable to credit Atty. Martin's charge that Atty. Bragdon failed his client by neglecting objections during the testimony of Ms. Siemen, Inspector Briggs or Officer Rolland.

*Second Prong of Strickland Not Met*

As set forth in the foregoing discussion, and as to the claim of ineffective assistance of counsel, Petitioner has shown only that Atty. Bragdon failed to adequately frame a hearsay objection to Dr. Scattergood's response to a question from a juror. Notwithstanding any opinions by Atty. Martin, the Court finds no support in the trial transcript or the rules of evidence to establish any other claims of prejudicial error, particularly when considered against the wide latitude permitted counsel's discretion over trial tactics. For the reasons identified by the Supreme Court in finding no prejudicial error on direct appeal, this Court must conclude that Petitioner has not shown "a reasonable probability that, but for counsel's unprofessional errors, the proceeding would have resulted in a different outcome." *Grega*, 2003 VT 77, ¶7 (citing *Dunbar*, 162 Vt. at 212); *In re Pernicka*, 147 Vt. 180 (1986)(citing *Strickland v. Washington,* 446 U.S. 668, 687-88 (1984)).

7

What the Supreme Court characterized as harmless error cannot be considered sufficient to support proof of a likely different outcome during post-conviction review. Furthermore, based on its own consideration of the evidence reflected by the trial transcript, this Court agrees with the Supreme Court's view that "[t]he State's independent evidence of defendant's guilt overwhelms any effect the erroneous testimony may have had on the verdict." *Babson,* 2006 VT 96, ¶ 10. Despite Petitioner's efforts, as deployed by Atty. Bragdon along the only tactical lines plausibly available, the jury "could well have believed that defendant admitted to Penny that he touched the victim". *Id.* Finally, and importantly, any prejudice associated with Dr. Scattergood's response to the juror's question was significantly mitigated in consideration of N.C.'s primary testimony, since her "account of the abuse was both broader in scope and far more detailed than the doctor's hearsay testimony." *Id.*[4]

For the reasons stated in this opinion, the Court concludes that Petitioner has failed to demonstrate any grounds for overturning his conviction by way of post-conviction relief pursuant to 13 V.S.A.7131.

**WHEREFORE** it is hereby **ORDERED**:  Judgment is entered for the State, and the petition for post-conviction relief is **DISMISSED WITH PREJUDICE.**

Dated at Bennington this _____ day of _____, 2011.

_____
John P. Wesley
Superior Court Judge

---

[4] Atty. Martin's testimony included extensive focus on his belief that the "outcome" of Petitioner's case would have been different if the appeal had not been limited to a search for plain error.  Thus, he insists, if Atty. Bragdon had effectively challenged Dr. Scattergood's testimony as hearsay, and if he had likewise limited the impeachment of Ms. Babson, the case on appeal would have been seen in a far different light. According to Atty. Martin, given a sexual assault conviction characterized almost entirely as a credibility contest between the complaining witness and the defendant, the Supreme Court would have been much more likely to find reversible prejudice in errors as to the admissibility of evidence. The problem with this reasoning is twofold. First, neither Atty. Martin nor Petitioner offer authority for the proposition that *Strickland* is satisfied by demonstrating an enhanced likelihood of prevailing *on appeal*, as distinguished from showing that the outcome *of the trial* would have been different. More importantly, Petitioner has demonstrated no other error which would likely have changed the calculus on appeal, given the independent force of the testimony by the complaining witness abetted by consideration of Petitioner's statement as a confession, a conclusion properly within the jury's purview.

8

To the extent certain matters raised by Petitioner's submission were not fully addressed in the foregoing opinion, the Court adds the following discussion:

i) On redirect examination at Petitioner's trial, the State asked Penny Babson whether she told Detective Rolland that "when [she] confronted Barry, Barry said he touched [NC] and that he tried to blame [Penny] for staying up late and working on the computer as the reason why he had touched [NC]." Petitioner now faults Atty. Bragdon for failing to object to this question as being beyond the scope of redirect. He claims that the attempt to "blame" Ms. Babson "carries with it the obvious admission or confession to the crimes"

First, as generally discussed in the opinion with respect to the "moving targets" of Atty. Martin's opinion, the Court is unclear that this claim of unprofessional conduct is properly supported by expert testimony. However, even assuming Petitioner's expert unambiguously identified this failure to object as ineffective representation, the Court places no reliance on the opinion. Indeed, since the principal thrust of Atty. Martin's opinion centered on his claim that the State's impeachment witnesses were allowed to testify without a proper foundation under V.R.E. 613(b), it is ironic that he would also chide trial counsel for failing to object to a question that is plainly aimed at laying just such a foundation with respect to Det. Rolland's anticipated testimony. In any event, other than objections challenging "leading questions", it is difficult to imagine an evidentiary ruling imbued with greater judicial discretion than an objection that testimony is "beyond the scope" established by previous examination. Thus, whether or not to interpose such an objection is a quintessentially tactical determination. Certainly, in this instance, Petitioner's attempt at second-guessing does not plausibly rise to a failure of reasonably competent representation.

ii) Following the testimony of Penny Babson, the State called her sister, Nora Siemen, as an impeachment witness. In response to the State's question whether "she recalled telling her sister Nora that Barry had confessed to her that she had done it", Ms. Babson had responded, "No, another person I definitely wouldn't say anything like that to". However, Ms. Siemen testified that Ms. Babson had told her "that something had occurred", and that Ms. Sieman had told Ms. Babson "to call the police or I would".

Again, this was proper impeachment testimony, since Ms. Babson had denied describing Petitioner's confession to Ms. Siemen. As stated in the main body of this opinion, Atty. Bragdon knew that it was well within the trial court's discretion to have treated Ms. Babson's testimony on this point as inconsistent with prior statements to Ms. Siemen. Furthermore, since the State *had* given Ms. Babson an opportunity to explain her conversation with Ms. Siemen, there could be no Rule 613(b) basis for objection.

On his second day of testimony, having never identified the matter in response to expert interrogatories, Atty. Martin for the first time attempted to identify a separate basis for his claim that trial counsel fell below professional standards of competence in failing to object to Ms. Siemen's account of her conversation with Ms. Babson. Even assuming

9

the testimony qualified as proper impeachment, Atty. Martin claimed that an objection should have been made as to hearsay, because under V.R.E. 801(d)(1), even as a prior inconsistent statement, Ms. Babson's statement could not be considered to prove the truth of any assertions as it was not made under oath. As an example of incompetent representation, this is patently unconvincing.

As Petitioner acknowledges in his submission, Ms. Siemen's account of her conversation with Ms. Babson to the effect "that something had occurred" was extremely vague. This Court is surely not bound to uncritical acceptance of Petitioner's characterization that it was "nevertheless damaging to the defense". However, since the testimony was plainly likely to be sustained as proper impeachment, trial counsel's only approach would have been to ask for a cautionary instruction to the effect that the jury only give weight to the effect of the testimony on its consideration of Ms. Babson's credibility, and not for the truth of the suggestion "that something had occurred". Yet, as Atty. Bragdon testified, experienced defense counsel rarely ask for such an instruction since it has the potential effect of highlighting and reinforcing the prejudicial aspects of testimony. As to the vague suggestion created by Ms. Siemen's statement, whether or not to seek a cautionary instruction was too discretionary to form a credible basis for a claim of substandard representation.

iii. As with its strategy involving Ms. Siemen, the State called Investigator Garry Briggs to rebut the testimony by Ms. Babson that she told no one that Petitioner had confessed to her. As explained above, and in the main body of the opinion, this inquiry proceeded with a proper foundation under Rule 613(b) and was plainly proper impeachment. Indeed, when Atty. Bragdon attempted to limit certain aspects of Briggs' testimony on relevance grounds, Judge Suntag squarely ruled: "It's a prior inconsistent statement". Petitioner claims unpersuasively that the Court's ruling was "in error"; but even if it was, it certainly informed trial counsel of the likely futility of making further such objections to discretionary rulings, potentially costing him credibility with the jury.

As with his opinion regarding Ms. Siemen's testimony, Petitioner's expert augmented his previous disclosed opinions by claiming at trial that Atty. Bragdon should have objected under Rule 801(d)(1). Yet, Briggs testified that Ms. Babson told him that "Barry admitted to her that he had touched [NC]". This statement by Petitioner to Ms. Babson was an admission, making it separately exempt from the hearsay exclusion under V.R.E. 801(d)(2).

Atty. Bragdon persuasively explained a trial strategy that did not include vigorous challenge to testimony related to Petitioner's statement to Ms Babson that "he did it". As noted in the main body of the opinion, counsel had little choice in this regard; Petitioner's belated attempts to suggest means by which such testimony might have been excluded remain unconvincing.

iv. Petitioner also challenges aspects of trial counsel's handling of State's witness Detective David Rolland. Although suggesting that testimony relating to the discovery of pornographic materials was "extremely prejudicial", and acknowledging that Atty. Bragdon successfully objected to limit the scope of such testimony, Petitioner fails to explain what trial counsel should have done to more completely contain this line of inquiry. Furthermore, there is no claim of ineffective assistance in this regard which was

either properly noticed to the State, or supported by a cogent opinion by Plaintiff's legal expert.

Det. Rolland also testified that Ms. Babson told him that N.C. had stated to her "this happened [to me] because [I] had been bad". Petitioner now claims this was "double-hearsay", and that trial counsel's failure to object amounted to ineffective representation. To the contrary, the statement is not hearsay because it contains no assertion of fact. Rather, it portrays N.C.'s state of mind as related to her mother. On its face, the statement does not incriminate Petitioner; indeed, it could easily be construed as more helpful than damning. Any other objection - on relevance grounds, for example – would have to be seen as within trial counsel's broad discretion, especially since the success of such an objection would have been eminently unpredictable.

**Conclusion:** As explained herein, having given due consideration to Petitioner's post-trial submissions, the Court finds no reason to alter the conclusions reached in the main body of this opinion.

Dated at Bennington this           day of                    , 2011.


_____
John P. Wesley
Superior Court Judge